Simon B. BUCKNER, Appellant,

v.

Douglas W. BURNETT and The
Honorable William Skaggs,
Respondents.

No. WD 50865.

Missouri Court of Appeals,
Western District.

Nov. 7, 1995.

Deborah G. Buckner, Jefferson City, for
appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cyn-
thia A. Quetsch, Asst. Atty. Gen., Jefferson
City, for respondents.

Before SPINDEN, P.J., SMART, J., and
TURNAGE, Senior Judge.

PER CURIAM.

On the day that Simon B. Buckner filed his
lawsuit to obtain records of the Speaker of

the House's long distance telephone calls, state officials produced the records. The circuit court concluded that the dispute was moot and granted summary judgment for the officials. Buckner appeals. He argues that he established that the officials violated the law by not producing the documents immediately, so the circuit court should have denied the officials' motion for summary judgment. He also argues that granting summary judgment was error because the circuit court did not resolve his allegation that the officials purposely refused to produce the records and, therefore, he should have been awarded reasonable attorney fees. We affirm.

This dispute began on July 26, 1994,[1] when Buckner hand-delivered a written request to Douglas Burnett, chief clerk of the House of Representatives, and the Honorable William Skaggs, representative of the 31st Legislative District and chairman of the Accounts Committee, asking for "a list of all telephone numbers assigned to Representative Robert F. Griffin or to the Office of the Speaker of the House, for which the State of Missouri pays[.]" Buckner also asked for records of long distance calls made from those numbers.

Skaggs provided five telephone numbers. He did not provide the record of long distance calls made from those numbers, he said, because he had asked the Attorney General for an opinion as to whether or not such records were open to the public.

The Attorney General answered Skaggs' inquiry:

Telephone records of an individual member of the General Assembly utilized by the House Accounts Committee to reimburse a telephone company for services received are "record[s] ... retained by ... any public governmental body" pursuant to Section 610.010(6). As such, the billing records will remain public records of the General Assembly regardless of whether an individual member later reimburses the House Accounts Committee for specific calls made.

In the meantime, Buckner learned that Skaggs' list did not include a toll-free "800" number paid for by the state and assigned to Griffin's office. On August 30, Buckner sent a letter to Skaggs and Burnett asking for "billing and calling records reflecting charges and calls made to any '800' number telephone service installed for Representative Robert Griffin or the Office of the Speaker of the House." On September 2, Skaggs responded to Buckner's request, "This information has been requested but has not been delivered."

On September 6, Buckner sent another written request to Skaggs and Burnett asking for "[r]ecords reflecting the existence of any credit or expense (by which latter term I mean 'American Express') card accounts the State has established for Representative Griffin or the Office of the Speaker of the House." In a letter dated September 9, Skaggs acknowledged the existence of an "800" number assigned to the Speaker's office. He also said, "The state has not established any credit card accounts for the speaker." Buckner, however, later discovered that Griffin did have an American Express account which listed on its billing statement "Bob F. Griffin, State of Missouri."

On September 12, Skaggs and Burnett provided Buckner access to records of calls to another "800" number operated by the House of Representatives but not to the "800" number in the Speaker's office. On September 16, Burnett told Buckner that the records he had requested concerning the Speaker's "800" number had been ordered but not yet received. Later that same day, Buckner went to the State Records Center and asked for the Speaker's telephone records. Personnel there told him that those records had not been transferred to the center and that he would have to obtain them at the Capitol.

That afternoon, Burnett told Buckner that he had requested the records from the Office of Administration, but they had not been delivered to him. James Schutt, director of the Office of Administration's Division of

---

1. All events occurred in 1994.

**910**

Data Processing and Telecommunications, told Buckner that he was unaware of any request by the House of Representatives asking for billing and calling records for any "800" number service installed for the Speaker. Schutt, however, later determined that the House of Representatives had requested those records on September 12.

On September 19, Buckner filed suit against Skaggs and Burnett contending that they had violated Chapter 610, RSMo.[2] Buckner requested that the court order Skaggs and Burnett to provide immediate access to the requested telephone records and to respond to future requests accurately as provided by law. Buckner also prayed for costs and attorney's fees. Before filing the suit, Buckner delivered copies of his petition to Skaggs and Burnett. Later that afternoon, before being served with summons, Skaggs notified Buckner by a hand-delivered letter that the records concerning the Speaker's "800" number would be available to Buckner at 3:00 P.M. that day.

Skaggs and Burnett filed a motion for summary judgment with the circuit court in response to Buckner's lawsuit. Skaggs and Burnett contended that Buckner's suit was moot because they had already turned over the records to Buckner. Supporting their motion was an affidavit by Burnett stating that he was the custodian of certain records of the House of Representatives but not the custodian of "state telephone records or expense invoices or documentation of legislators." Burnett said that, rather than denying Buckner's request for telephone records, he took it upon himself to order these records from the Office of Administration.

On February 3, 1995, the circuit court granted Skaggs' and Burnett's motion stating:

WHEREAS, [Buckner] filed this action on September 19, 1994 pursuant to Chapter 610, RSMo, seeking access to certain records reflecting charges and calls to an "800" number telephone service installed

for the Office of the Speaker of the House; and

WHEREAS, [Skaggs and Burnett] fully complied with that request on September 19, 1994 before summons was served in this case

. . . .

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that [Skaggs' and Burnett's] motion for summary judgment is granted for the reasons stated therein; that [Buckner's] claims for injunctive relief and costs are denied; and that this case is hereby dismissed, each party to bear his own costs.

Buckner argues on appeal that the circuit court's granting summary judgment for Skaggs and Burnett was wrong "because the record demonstrates that a violation of Chapter 610, RSMo, occurred, and, therefore, [Skaggs and Burnett] have no right to judgment as a matter of law." We disagree.

Section 610.027 provides the remedies for violations of Chapter 610. Section 610.027.1 says that "[a]ny aggrieved person ... may seek judicial enforcement of the requirements of sections 610.010 to 610.026[.]"

 The circuit court correctly concluded that because Buckner had received the records, the court had nothing to enforce. The matter was moot. "A question is justiciable only where the judgment will declare a fixed right and accomplish a useful purpose." *Local Union 1287 v. Kansas City Area Transportation Authority*, 848 S.W.2d 462, 463 (Mo. banc 1993). "A cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy." *Bank of Washington v. McAuliffe*, 676 S.W.2d 483, 487 (Mo. banc 1984). "The purpose of summary judgment ... is to identify cases (1) in which there is no genuine dispute as to the facts and (2) the

**2.** All statutory references are to the Missouri Revised Statutes of 1994.

facts as admitted show a legal right to judgment for the movant." *ITT Commercial Finance Corporation v. Mid–America Marine Supply Corporation,* 854 S.W.2d 371, 380 (Mo. banc 1993). Because Buckner did not present an action in which a judgment by the circuit court would have any practical effect in getting Buckner the records he sought, his action was not justiciable, and the circuit court properly granted summary judgment for mootness.

Buckner responds "if it is necessary for a citizen to file litigation to have the right of access to public records, then the system has failed." Buckner asserts that he has a right to obtain from the circuit court an order directing Skaggs and Burnett to comply with future requests.

■■■ Section 610.027 does not provide for a remedy in the nature of an injunction, ordering public officials to comply with future requests. Indeed, public officials are already under that mandate by virtue of Chapter 610. We agree, however, with Buckner's notion that Chapter 610 would be a hollow law if it permitted a custodian intentionally to forestall production of public records until the requester sued. Section 610.027.3 resolves the issue by providing:

> Upon a finding by a preponderance of the evidence that a member of a public governmental body has purposely violated sections 610.010 to 610.027, the member may be subject to a civil fine in the amount of not more than five hundred dollars and the court may order the payment by such member of all costs and reasonable attorney fees to any party successfully establishing a violation of sections 610.010 to 610.026.

A public official's intentionally forestalling production of public records until the requester sues would be a purposeful violation of Chapter 610 and would be subject to a fine and reasonable attorney fees.

Buckner asserts that he accused Skaggs and Burnett of purposely violating Chapter

610 and that this is a second reason that the circuit court's granting of summary judgment was error. Whether Skaggs and Burnett had purposely violated the law and whether Buckner should be awarded reasonable attorney fees were still genuine issues not resolved by the circuit court, he argues. We disagree. Buckner did not plead a purposeful violation.[3]

Asked where he had averred in his petition that Skaggs and Burnett purposely violated Chapter 610, Buckner pointed to these allegations:

> ... As of this date, [Skaggs and Burnett] have neither provided [Buckner] access to the requested records, provided a detailed explanation of the cause for delay and the earliest time and date the records will be available for inspection nor informed [Buckner] of any statutory provision authorizing the denial of access.

> ... [Skaggs and Burnett] have failed to respond fully and accurately to [Buckner's] open records requests.

He argues that these allegations, along with his prayer, were sufficient to plead that the officials purposely violated Chapter 610. Buckner's prayer asked for:

[A]n Order of this Court:

> (1) Directing [Skaggs and Burnett] to provide [Buckner] immediate access to the requested telephone records;

> (2) Directing [Skaggs and Burnett] to respond to future requests accurately and as provided by law;

> (3) Assessing all costs of this action, including [Buckner's] reasonable attorney's fee, against [Skaggs and Burnett]; and

> (4) Such other relief as this Court deems proper.

■■ Missouri is a "fact pleading state." *ITT Commercial Finance Corporation,* 854 S.W.2d at 379. This means that a petition

---

**3.** We find nothing in the record indicating that Buckner asked for an opportunity to amend his petition.

must contain a "plain and concise statement of the facts constituting a cause of action." *Id.* (quoting Article IV of the Civil Code of 1849). "[T]he objective of pleadings is to present, define, and isolate the controverted issues to advise the trial court and the parties of the issues to be tried, and to expedite trial on the merits." *Computer Sales International, Inc. v. Family Guardian Life Insurance Company,* 860 S.W.2d 826, 829 (Mo. App.1993). "The pleadings limit and define the issues of the case." *Luethans v. Washington University,* 894 S.W.2d 169, 172 (Mo. banc 1995).

■ Section 610.027 provided two remedies: (1) the circuit court's enforcement of § 610.023 and (2) a fine and attorney fees in cases of purposeful violations. To have notified the circuit court that he intended to take advantage of the second remedy, Buckner would have had to plead facts averring that Skaggs and Burnett purposely violated Chapter 610. That he pleaded that the officials had not given him access to the requested records and that they had not responded fully and accurately to his requests did not define and isolate the issue of whether the officials had purposely violated the statutes. An official obviously can fail to give access and fail to respond fully without purposefully violating Chapter 610. Buckner failed to plead sufficient facts to give notice that he was contending a purposeful violation.

That his prayer for relief asked for reasonable attorney fees does not aid him. "The prayer is no part of the petition and may be disregarded in determining what relief, if any, is authorized by the petition." *Stafford v. McCarthy,* 825 S.W.2d 650, 658 (Mo.App. 1992) (citing *Caldwell v. Eubanks,* 326 Mo. 185, 30 S.W.2d 976, 980 (Mo.1930)).

For these reasons, we conclude that the circuit court properly granted summary judgment for Skaggs and Burnett. We affirm.