CITY OF CLINTON, Missouri, Respondent,

v.

TERRA FOUNDATION, INC., Appellant,

Elmer L. Flick, Defendant,

Ricci L. McCallister a/k/a Ricci L. Turner, Appellant,

and

David L. Flick, Appellant.

No. WD 62813.

Missouri Court of Appeals, Western District.

June 22, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 27, 2004.

---

Joann T. Sandifer, St. Louis, MO, for Appellant.

J. Eric Mitchell, Clinton, MO, for Respondent.

Before: LOWENSTEIN, P.J., EDWIN H. SMITH and HOWARD, JJ.

HAROLD L. LOWENSTEIN, Judge.

Appellants David L. Flick, Ricci L. McCallister, and Terra Foundation, Inc. used land in the city of Clinton to grow wild flowers and prairie grasses. Clinton sought and the trial court issued a permanent injunction, which, among other

things, barred appellants from using land zoned R–1 (Residential) for business or commercial purposes. Appellants claim the trial court misinterpreted Clinton's zoning code and that the injunction violates Rule 92.02(e).

## I. FACTS

David L. Flick and Ricci L. McCallister grow prairie grasses and wildflowers on a tract of land initially owned by Terra Foundation, Inc. but now owned by Flick. Terra, a non-profit organization, was incorporated by Flick, who remains its president. Flick is a horticulturist who specialized in the propagation of indigenous prairie grasses. The grasses and wildflowers are then sold, exchanged, or given away off-site. (In 2001, the land yielded around 9,500 plants.) The land is in the City of Clinton's zone R–1 single-family residential district. In 1998, Terra had attempted to have the land rezoned C–O office district, but its application was denied.

There are two buildings on the land. The first is a thirty-by-twenty-five foot shed that Flick occasionally uses as a residence. It has a bathroom, bathing facilities, and a refrigerator in it. Its principal use is as Terra Foundation's business office, though Flick spent the night there for months in 2001. The second building is a sixty-by-forty foot metal building that has a loading dock for semi-trucks. It is used to store seeds, mulch, and containers used to grow the wildflowers and prairies grass. The grass and wildflowers are sold or given away at another location.

The City told Flick that he was violating Clinton's zoning ordinances and that he should stop. Flick ignored the City's

warnings, and the City then brought this petition seeking a permanent injunction barring Flick, McCallister and the Terra Foundation from using the land for "commercial purposes, contrary to the [o]rdinances of the [c]ity ..." It also sought any other relief that the trial court deemed "just and proper under the circumstances."

After a hearing, the trial court found that "[t]he use of this property has principally been commercial, in that all of the grasses and plants produced on the property have been sold or given, and transported off the property to other places" and that "[t]he use of this property has not been agricultural, as defined by the Code, because it is the primary purpose of the use this property is put to—not secondary to normal agricultural activities." The trial court issued a permanent injunction that barred Flick, McCallister, and the Terra Foundation from "(1) utiliz[ing] [the land] for commercial or business purpose [*sic*]; (2) produc[ing] or grow[ing] grasses, plants, flowers for sale, gift, exchange, donation or off-site use at [the land's address]; (3) us[ing] the smaller of two buildings now on the premises [of Terra's land] for any business being conducted on the property; or (4) us[ing] [the land] for any purpose or use that violates the Clinton Zoning Code.".[1]

Terra claims that the trial court misinterpreted the Clinton zoning code and that the injunction violates Rule 92.02(e).

## II. SCOPE OF REVIEW

A primary rule of construction in Missouri is that zoning ordinances are in derogation of property rights conferred by the common law, and as such should, wher-

---

1. The trial court purported to amend the judgment more than thirty days after entry to delete paragraph (4) of the injunction. Both parties agree that the court did not have juris- diction to amend the judgment. *See Danger-field v. City of Kansas City,* 108 S.W.3d 769, 772 (Mo.App.2003) (citing Rule 75.01).

ever ambiguous, be strictly construed in favor of the landowner. *City of Louisiana v. Branham*, 969 S.W.2d 332, 338 (Mo.App. 1998). "Where the language of a statute is clear and unambiguous, we will give effect to the language as written and will not resort to statutory construction." *Cantwell v. Douglas County Clerk*, 988 S.W.2d 51, 54–55 (Mo.App.1999). In construing city ordinances the same rules that apply to statutory construction apply: The cardinal rule is to give effect to the intent of the legislative body, and the words should be given their plain and ordinary meaning. *State ex rel. Teefey, v. Bd. of Zoning Adjustment of Kansas City*, 24 S.W.3d 681, 684 (Mo. banc 2000). Where two statutory provisions covering the same subject matter are unambiguous standing separately, but are in conflict when examined together, a reviewing court must attempt to harmonize them and give effect to both. *In re K.C.M.*, 85 S.W.3d 682, 692 (Mo.App.2002). If that harmonization is impossible, the general statute must yield to the statute that is more specific. *Day v. Wright County*, 69 S.W.3d 485, 490 (Mo.App.2000). This court will affirm an injunction unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it misconstrues or misapplies the law. *Kessler–Heasley Artificial Limb, Co. v. Kenney*, 90 S.W.3d 181, 184 (Mo.App. 2002).

### III. ANALYSIS

Clinton's zoning code ("the Code") states, in a preamble titled "General Purpose," the following regarding the zoning of a district R–1 single-family residential:

This is a residential district intended for single-family development. The principle use of the land is for single-family detached dwellings and related recreational, religious and educational facilities normally required to provide the basic elements of a balanced and attractive residential area. These areas are intended to be defined and protected from the encroachment of uses not performing a function necessary to residential environment. Internal stability, attractiveness, order, and efficiency are encouraged by providing for adequate light, air, and open space for dwellings and related facilities and through consideration of the proper functional relationship of each element.

CLINTON, Mo., ORDINANCES art. II, § 2(A) (1994). In the section of the zoning code immediately following this statement of general purpose, the code lists the following "permitted uses" of R–1 land:

1. Single-family detached dwellings.

2. Cemeteries.

3. Churches and other places of worship including parish houses, but excluding rescue missions.

4. Elementary and secondary schools and libraries.

5. Public and private parks.

6. Garden and *agricultural crops*, but not the raising of livestock.

7. Home occupations.

8. Accessory buildings which are not a part of the main buildings, including a private garage, and uses customarily incidental to any of the above permitted uses when located on the same lot.

CLINTON, Mo., ORDINANCE art. II, § 2(B) (1994) (emphasis added). The word "garden" is not defined, though the code defines "agriculture" as:

The use of land for agricultural purposes, including farming, dairies, pasture, apiculture, horticulture, viticulture, and animal and poultry husbandry and the necessary accessory uses for packing, treating, or storing the produce; provided, however, that the operation of

any such accessory uses shall be secondary to that of the normal agricultural activities; and further provided that the keeping of poultry and livestock shall be in accordance with other applicable city ordinances.

CLINTON, MO., ORDINANCE art. I, § 7(B)(4) (1994).

**1.**

■ Terra's first argument is that the trial court misinterpreted Clinton's zoning code as forbidding all commercial or business activity in districts zoned R–1. Nothing in Clinton's zoning code directly forbids commercial or business use of R–1 land. To the contrary, two permitted uses of R–1 land (private parks and home occupations) are explicitly commercial. And the rest are not necessarily non-commercial. A cemetery, for instance, can make money by selling plots. The code does not *per se* prohibit commercial activities on R–1 land.

The City maintains that the statement of general purpose makes clear that Terra's principally commercial activity is forbidden. The statement proclaims that "[t]he principle *(sic)* use of the land [zoned R–1] is for single-family detached dwellings and related recreational, religious and educational facilities normally required to provide the basic elements of a balanced and attractive residential area." The trial court didn't just prohibit activities that are primarily commercial; it prohibited Terra from engaging in *any* commercial or business activities on the land. (And the City's petition asked for precisely this.) In addition, a "statement of purpose embodied in a zoning ordinance . . . cannot be employed to bypass the specific language of the ordinance." 83 AM.JUR.2D *Zoning & Planning* § 638 (2003). *See also Lett v. City of St. Louis*, 948 S.W.2d 614, 617 (Mo.App.1996) (statutory preambles "will

not be considered for the purpose of contradicting the enacting portion of the statute"). So if Terra's activities fall within the ambit of the list of permitted uses, the statement of general purpose, insofar as it is to the contrary, must give way. In any event, the City has misread the statement of general purpose, which does not purport to qualify the list of permitted uses. If it did, it would make the code contradictory and, thus, provide no guidance to landowners. The list of permitted uses in II(A), would allow a landowner to use his land exclusively as a cemetery or park, but the statement of general purpose, as interpreted by the City, would require the landowner to build a residence, although there is no express requirement even in the statement of purpose. Finally, it should be noted that to adopt the City's interpretation would require this court to invert "[o]ne of the primary rules of construction," that zoning ordinances must be strictly construed, since they are in derogation of common law property rights. *City of Louisiana v. Branham*, 969 S.W.2d at 338 ("Where a term in a zoning ordinance is susceptible of more than one interpretation, the courts are to give weight to the interpretation that, while still within the confines of the term, is least restrictive upon the rights of the property owner to use his land as he wishes.").

The permanent injunction's prohibition of Terra's use of its property for commercial or business purposes is invalid.

**2.**

■ Terra next claims that the trial court erred in permanently enjoining Terra from using its land to "produce or grow grasses, plants, flowers for sale, gift, exchange, donation or off-site use." Terra is correct.

The injunction does not bar Terra from producing or growing grasses, flowers, or

plants for its own consumption, and neither does the zoning code. Grasses and flowers are "garden and agricultural crops," which may be grown on R–1 land. Crops are "[p]roducts that are grown, raised, and harvested." BLACK'S LAW DICTIONARY 383 (7th ed.1999). The code gives a broad and nonexclusive definition of "agriculture" as *"including* farming, dairies, pasture, apiculture, horticulture, viticulture, and animal and poultry husbandry[.]" Agriculture also means "the science or art of the production of plants and animals useful to man and in varying degrees the preparation of these products for man's use and their disposal (as by marketing)." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 44 (1993).

Flowers are definitely garden crops, that is, products that are grown, raised, and harvested in gardens (e.g., flower gardens). Grasses might also be garden crops. They are definitely agricultural crops, that is, plant products grown and raised for man's use. This would seem to follow from the fact that hay, which is just dried grass, is an agricultural product. It is hard to fathom how a code that allows beekeeping (apiculture), the growing of grapes (viticulture), dairy farming, and the raising of chickens would balk at a landowner using his land to grow grass. Even the City concedes in its brief that the zoning code "clearly allows the growth and harvesting of plants within [an] R–1 district." [2]

The key issue here is whether Terra can grow flowers, grasses, and like plants "for sale, gift, exchange, donation or off-site use" or only for personal consumption. As previously noted, nothing in the code explicitly bars commercial activities. Neither does the code expressly bar non-subsistence use of garden and agricultural crops. If the drafters of the code intended to prohibit anything but subsistence use of agricultural and garden crops, why then would it allow the owner to use the entire tract of land to grow, say, corn and not require the owner to have a residence on the land?

The City claims that allowing an R–1 landowner to sell, donate, or exchange these crops would be inconsistent with having a residential district and with the statement of general purpose. But note that the part of the injunction under consideration does not prohibit sales, exchanges, or donations of plants, grasses, and the like. It prohibits the growing of these things *"for* sale, gift, exchange, donation, or off-site use." Assuming, for the sake of argument, that the City's interpretation of the injunction is correct, its argument proves too much. If accepted, the argument would prohibit an R–1 landowner from giving away or selling a handful of tomatoes to a next-door neighbor. Granted, Terra operates at a much larger scale, having grown 9,500 plants in 2001. But the code does not establish a ceiling on the number of crops that may be grown on R–1 land, and even if it did, the permanent injunction's prohibition on Terra's sale, donation, exchange, or off-site use of flowers, grasses, and plants would be too broad. In any event, as explained above, the statement of general purpose does not cir-

---

**2.** Clinton's argument here flies in the face of the trial court's ruling that "[t]he use of this property has not been agricultural, as defined by the [c]ode, because it is the primary purpose of the use of the property is put to—not secondary to normal agricultural activities." The trial court apparently thought that Terra's activities were not "normal agricultural activ-

ities." However, whether an R–1 landowner's "activities are normal agricultural activities is only relevant in determining whether the landowner's accessory uses for packing, treating, or storing the produce" is permitted. CLINTON, MO., ORDINANCE art. I, § 7(B)(4) (1994).

cumscribe the scope of individual permitted uses. *See supra.* Moreover, since the code allows private parks (perhaps including amusement parks) and home occupations (e.g., sales), it cannot be said that the code generally disapproves of the use of R–1 land in a manner that redounds to the benefit of non-landowners. Since the City's zoning code must be strictly construed, this court is convinced that when the City allowed R–1 landowners to grow garden and agricultural crops, it also gave them permission to dispose of the crops, by sale, exchange, gift, or personal consumption.

According to the City, accepting Terra's argument would result in the overlapping of permitted uses between zoning districts. But such overlap is common. In a C–O district, office use is permitted; in an R–1 district, office use is permitted if it is an accessory use or part of a home occupation. Agricultural uses of land are allowed in an A–1 rural district; in an R–1 district, one can grow garden and agricultural crops.[3]

The permanent injunction's prohibition of Terra's use of its property to "produce or grow grasses, plants, flowers for sale, gift, exchange, donation or off-site use" is invalid.[4]

### 3.

■ This court now addresses the permanent injunction's third prohibition—that Terra may not "use the smaller of the two buildings now on the premises ... for any business being conducted on the property." Terra, quite correctly, claims that this pro-

hibition, like the previous two, is invalid. The code allows "[a]ccessory buildings which are not a part of the main buildings, including a private garage, and uses customarily incidental to any of the above permitted uses when located on the same lot." It is "customarily incidental" to the growing of flowers, grasses, and similar plants for sale, donation, or exchange off-site to have an office on-site at which to keep records of these sales or exchanges.

The office is also an "accessory building," "[a] building customarily incidental and appropriate and subordinate to the main building or use and located on the same lot with the main building." CLINTON, MO., ORDINANCE art. I, § 7(B)(1) (1994). The primary purpose of Terra's land is to grow flowers and grasses. The office is dependent on the land being used in such a manner and, thus, is "subordinate to the main ... use." It is also customarily incidental and appropriate to have an office for commercial sales of grass and flowers.

In summary, the following facts render the issuance of an injunction in favor of the government limiting the landowner's use of real property unsupported:

— Flick is a horticulturist.
— The growing of prairie grasses and wildflowers are permitted uses under the Code, they are agricultural crops and, specifically, their production is horticulture, the raising of plants.
— The buildings appellants constructed on the property were accessory buildings and were secondary and

---

3. It is thus triply unimportant that Terra attempted to have its land rezoned C–O office district—(1) because a landowner's interpretation of the ordinance is not binding on this court; (2) because a landowner may seek a rezoning out of an abundance of caution, believing that his current use is allowed but not

being certain; and (3) because overlapping uses between districts is common.

4. Since Terra has not argued the point, it is unnecessary to decide whether Terra may sell, exchange, or donate the flowers, grasses, and like plants on the R–1 land.

incidental to normal agricultural uses.

— It was admitted by the City that its Code did not require a residence located on R–1 zoned land. ("Although the permitted uses are not conditional on having a residence on said lot, it is the intent of the ordinance to 'provide the basic elements of a balanced and attractive residential area.' ")

— Nothing in the Code denounces or limits commercial activity in an R–1 zone, but to the contrary, commercial activities, such as "home occupations," are mentioned or implied in the permitted uses.

Therefore, even though the general preamble of zoning speaks of a residential district for single family development, the specific uses allowed in the text written by Clinton pertaining to R–1 districts allow horticultural uses and do not denounce the use of private property for commercial purposes.

**4.**

Terra's final contention is that the injunction violates Rule 92.02(e), which provides that "[e]very order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the petition or other document, the act or acts sought to be restrained[.]"

While a ruling on this point is not decisional, this court notes that the injunction runs afoul of Rule 92.02(e). The injunction's prohibition on Terra's "use [of its R–1 land] for any purpose or use that violates the Clinton Zoning Code" is not "specific in terms." An injunction to obey the law violates Rule 92.02(e)'s requirement that the injunction "describe in reasonable detail, and not by reference to the petition or

other document, the act or acts sought to be restrained." *See also S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240 (2nd Cir.2001) ("[A]n injunction must be more specific than a simple command that the defendant obey the law.").

The judgment of the trial court is reversed and the injunction is dissolved. No costs.

All concur.