STATE of Missouri AT THE RE-
LATION OF NOLAND ROAD
RACEWAYS, INC., Appellant,

v.

BOARD OF ZONING ADJUSTMENT
OF KANSAS CITY, Missouri,
Respondent.

No. WD 63038.

Missouri Court of Appeals,
Western District.

July 13, 2004.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 31, 2004.

Application for Transfer Denied
Oct. 26, 2004.

Mark H. Epstein, Kansas City, MO, for
Appellant.

Galen P. Beaufort, M. Margaret Sheahan Moran, co-counsel, Kansas City, MO, for Respondent.

Before ULRICH, P.J., LOWENSTEIN and EDWIN H. SMITH, JJ.

HAROLD L. LOWENSTEIN, Judge.

This is an appeal from a decision of the Circuit Court of Jackson County. The court affirmed the Board of Zoning Adjustment ("BZA") of Kansas City's denial of Appellant's proposed amendment to its conditional use permit. The Board of Zoning Adjustment held a public hearing on Noland Road Raceway, Inc.'s ("Noland") application to amend its Conditional Use Permit[1] ("CUP"). Noland operated a racetrack on a parcel of land and applied to BZA to allow it to add buildings and otherwise modify the racetrack. BZA held public hearings on the matter and ultimately denied the amendment. Noland appealed to the Circuit Court, which upheld BZA's decision. Noland now appeals the judgment to this court. This court affirms.

The parcel of land which is the subject of this appeal is an approximately 93 acre tract owned by Noland. Noland operated the "Kansas City International Raceway" on this property. On April 11, 1967, BZA approved Noland's application for a conditional use permit ("CUP") for the racetrack on the subject property. The permit detailed the structures and uses for which Noland could use the property and was not limited to a specific period of time. On January 2, 1980, BZA approved a request to amend the CUP in order to modify the racetrack's original parking lot.

In November of 2000 Noland hired a contractor who constructed a new metal storage building on the property. Unknown to Noland, the contractor had not obtained a permit prior to constructing the building and the Codes Administration Department cited Noland for building this structure without obtaining the necessary permit. As a result, Noland applied for an amended CUP which included the aforementioned building and various other modifications to the property, such as adding new buildings, modifying the parking lots, and enlarging the timing tower. Noland also intended to modify the hours in which it would be allowed to operate the racetrack.

On October 23, 2001, and March 12, 2002, BZA held public hearings on the application. Various witnesses testified both for and against Noland's proposed modifications. After all witnesses had been heard, BZA held a closed session to deliberate and vote. Upon completion of this session, the parties gave their closing statements and BZA announced their denial of Noland's application. Noland appeals to this court.

In review of BZA's denial of the application to amend the CUP, this court reviews the agency ruling, rather than that of the Circuit Court. *Windy Point Partners, LLC v. Boone County*, 100 S.W.3d 821, 824 (Mo.App.2003). The scope of review is limited to determination of whether BZA's action is supported by competent and substantial evidence upon the whole record or whether the judgment is arbitrary, capricious, unreasonable, unlawful or in excess of its jurisdiction. *Cousin's Advr., Inc. v. B.Z.A. of Kansas City*, 78 S.W.3d 774, 778 (Mo.App.2002). In determining whether substantial evidence existed to support the BZA's decision, this

---

1. A conditional use permit is written government permission allowing a use inconsistent with zoning but necessary for the common good, such as locating an emergency medical facility in a predominantly residential area.

court must view the evidence and reasonable inferences therefrom in a light most favorable to the decision. *State ex rel. Teefey v. B.Z.A. of Kansas City*, 24 S.W.3d 681, 684 (Mo. banc 2000).

Three witnesses testified at the hearing. Wayne McMurtry, former vice-president of the National Hot Rod Association and engineer, examined the specifications of the racetrack and the various decibel levels at various distances from the track. For example, McMurtry claimed that at a distance of half a mile from the racetrack, the decibel level would be roughly 70 decibels. At the hearing he explained that, for comparison, "the noise in the lobby probably exceeded 70 decibels." Mr. McMurtry did not, however, actually visit the site of the racetrack.

Jeff Martin, vice president of Noland, testified that the changes reflected in Noland's proposed amendment were necessary if the racetrack were to remain economically viable. Rob Park, co-owner of the racetrack, testified that the changes in the hours of operation were necessary if Noland were to continue to host the type of events that it has at the track.

Noland produced several witnesses who testified in support of the proposed changes. One lived very near the racetrack and claimed the noise never bothered him. Furthermore, many witnesses who lived near witnesses for the opposition (who testified that the noise was, indeed, a problem) stated the noise and traffic were not a problem for them.

Noland stressed the fact that BZA should *only* consider the proposed changes to the CUP, because the basic elements of the CUP had already been approved. There is, however, nothing in the zoning code that states that BZA should not consider the *entire property* at issue in the CUP and the proposed amendment to the CUP as a whole. It is also unclear whether the distinction between considering just the amended changes, and the CUP *and* the amended changes, would ultimately have affected BZA.'s decision.

BZA produced several witnesses who lived in the vicinity of the racetrack. They testified, in opposition the Noland's assertions, that the noise levels were indeed loud enough to interfere with the enjoyment of their property. One witness who lived a mile from the track claimed that the racetrack has caused increased traffic and dangerous street racing on the streets near her home. Another who lived two miles away testified that in addition to the noise, the dust and unsafe traffic conditions were also hazardous.

This court will consider the evidence and all reasonable inferences from this evidence in the light most favorable to the administrative agency's findings. *EBG Health Care III, Inc. v. Mo. Health Facilities Review Comm.*, 12 S.W.3d 354, 358 (Mo.App.2000). Furthermore, this court has no authority to make determinations of fact in proceedings which originated in administrative tribunals. *Moore v. State Tax Comm'n of Mo.*, 862 S.W.2d 407, 412 (Mo.App.1993). As noted earlier, this court must only determine that there is reasonable and substantial evidence to support BZA's decision.

BZA offered testimony from various landowners in the vicinity of the racetrack. These witnesses testified that the noise of the racetrack is bothersome now, and will, therefore, be more of an impediment to the enjoyment of their property should BZA approve the amendment. In addition, the dust the racetrack generates and the unsafe driving conditions due to the numbers of spectators suggest that the racetrack may be hazardous to the neighbors as well. As a result, this court finds that BZA's decision is supported by substantial and

reasonable evidence and, therefore, this court must defer to its decision.

The judgment is affirmed. Rule 84.16(b).

All concur.