

# In the
# Missouri Court of Appeals
## Western District

CLAUDIA LEE & ASSOCIATES,

          Appellant,

v.

KANSAS CITY, MISSOURI BOARD OF
ZONING ADJUSTMENT,

          Respondent.

WD77928

OPINION FILED:

APRIL 12, 2016

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable James Dale Youngs, Judge**

**Before Division One: Alok Ahuja, P.J., Anthony Rex Gabbert, J. and James F. Kanatzar,**

**Sp. J.**

Claudia Lee & Associates (CLA) appeals from the circuit court's judgment in favor of the

Kansas City, Missouri Board of Zoning Adjustment (BZA) on CLA's First Amended Petition for

Writ of Certiorari; for Judicial Review; and for Declaratory and Injunctive Relief (First Amended

Petition) requesting, among other things, reversal of the BZA's determination that CLA

abandoned the north face[1] of its outdoor advertising sign located at 8906 Wornall in Kansas City

thereby requiring its removal. CLA asserts five points on appeal. First, CLA contends that the

circuit court erred in approving the BZA's finding that CLA was in violation of the Kansas City

---

[1]We recognize that only the north face of CLA's outdoor advertising sign is in dispute and, therefore, unless otherwise noted, any reference to CLA's sign herein is only with regard to the north face of the sign.

Zoning and Development Code Section 88-445-14-B.5(g)(1), for CLA's sign remaining "blank" for a period of 90 days. CLA argues that the BZA decision was not authorized by law or supported by competent and substantial evidence upon the whole record, in that the BZA failed to enter Findings and Conclusions, failed to enter the ordinance in evidence or provide CLA with a copy of the ordinance, and the new ordinance had not yet gone into effect. Second, CLA contends that the BZA[2] erred in finding that CLA was in violation of the Kansas City Zoning and Development Code 88-445-14-B.5(g)(1), for the billboard remaining "blank" for a period of ninety days. CLA argues that the ordinance does not define a blank sign as a single side of the sign, and the ordinance provides for a thirty day period to cure, and pursuant to the plain and ordinary interpretation of the ordinance at least one side of the back to back, double-faced sign has always been in compliance, and/or appellant should have been given at least thirty days to remedy a violation. Third, CLA contends that the BZA erred in finding that no notice to CLA of the violation was necessary before ordering CLA to remove the billboard, because the BZA decision is unreasonable, arbitrary and capricious, in that CLA was unaware of the violations due to inadvertence and publication of the wrong version of the ordinance and CLA took immediate action to abate the violation upon its discovery. Fourth, CLA contends that the BZA erred by not allowing CLA to continue in CLA's nonconforming use, and the BZA decision is illegal and constitutes a taking, in that CLA must be allowed to continue in CLA's nonconforming use following the adoption of the ordinance. Finally, CLA asserts that the circuit court erred in dismissing CLA's open records act claim because CLA stated a claim for BZA's violation of the act. CLA argues that the court must accept the truth of the pleadings on a motion for judgment

---

[2]Although CLA appeals the judgment of the circuit court, we review the decision of the BZA, rather than that of the circuit court. *State at Relation of Noland Road Raceways, Inc. v. Board of Zoning Adjustment of Kansas City*, 145 S.W.3d 455, 456 (Mo. App. 2004).

on the pleadings, and CLA's pleadings allege that CLA forwarded and BZA received CLA's open records request and BZA failed to respond to the request within three days. We reverse in part and affirm in part.

## Factual and Procedural Background[3]

CLA is an Indiana Corporation that owns an outdoor advertising sign located at 8906 Wornall Road in Kansas City. The sign was installed in 2005 in a parking lot of a commercial establishment. The commercial property upon which the sign is located is zoned B3-2 and B1-1 by the City of Kansas City Zoning and Development Code (Code). The Code no longer permits outdoor advertising signs in districts zoned B3-2 or B1-1. CLA's Wornall Road sign is considered a legal nonconforming sign because it was erected prior to the Code being amended to exclude such signs from districts zoned B3-2 or B1-1. A legal nonconforming sign may remain in place as long as it remains in compliance with the Code's legal nonconforming use restrictions. One restriction in the Code is that, if a legal nonconforming outdoor advertising sign remains blank, as defined by the Code, for a continuous period of ninety days, that sign is deemed abandoned and, therefore, loses its legal nonconforming sign status. Section 88-445-14-B.5(g).

In November of 2010, a resident living near CLA's Wornall Road outdoor advertising sign complained to Kansas City's Planning and Development Department (City) that the sign had been blank for at least thirty days. In response, the City inspected the billboard on November 23, 2010, and deemed it to be blank. Sometime thereafter, the City called the telephone number

---

[3]On September 4, 2015, the BZA moved to strike CLA's Statement of Facts, and dismiss CLA's appeal, on the grounds that CLA's Statement of Facts is inaccurate, misleading, and incomplete. As we prefer to resolve an appeal on the merits and can ascertain the issues herein and have the record before us to examine the facts, we deny the BZA's motion to strike. *See Payne v. Markeson*, 414 S.W.3d 530, 545 (Mo. App. 2013).

printed on the sign and left a message advising that the City considered the sign to be blank. The City took photographs of the sign on November 23, 2010, December 27, 2010, January 26, 2011, February 25, 2011, and March 3, 2011. The City deemed the sign to be blank on each of those dates when the sign was photographed. On March 3, 2011, the City received notice from CLA that new advertising had been placed on the sign. The City's compliance staff documented that the new advertising message was solely promoting rental of the sign itself.

On March 9, 2011, the City sent written notice to CLA that, from November 23, 2010, until March 3, 2011, CLA's Wornall Road outdoor advertising sign had remained "blank" as defined by 88-445-14-B.5(g)(1). The notice offered no opportunity to cure the alleged infraction and ordered the sign removed within thirty days of the date of the notice. CLA appealed the notice of violation to the BZA.

On May 19, 2011, the City sent an amended notice of violation to CLA which corrected the section of the Code cited in the City's previous notice from 88-445-14-B.5(g)(1) to 88-445-14-B.5(g).

The BZA held a hearing on the appeal on May 24, 2011 and July 12, 2011. After taking evidence, the BZA voted to affirm the May 19, 2011, decision by the City that CLA's sign had been abandoned pursuant to 88-445-14-B.5(g) and, therefore, required immediate removal.

CLA appealed the BZA's decision to the circuit court, and the circuit court affirmed the decision of the BZA. CLA appeals.

**Standard of Review**

When reviewing a circuit court's judgment affirming a zoning board's decision, we review the decision of the BZA and not the judgment of the circuit court. *State ex rel. Teefey v. Board of Zoning Adjustment of Kansas City*, 24 S.W.3d 681, 684 (Mo. banc 2000). Our scope of

4

review is limited to determining "'whether the Board's action is supported by competent and substantial evidence upon the whole record or whether it is arbitrary, capricious, unreasonable, unlawful, or in excess of its jurisdiction.'" *Id*. (quoting *Hutchens v. St. Louis County*, 848 S.W.2d 616, 617 (Mo. App. 1993). We view the evidence and all reasonable inferences in the light most favorable to the BZA's decision. *Id.* We review questions of law de novo. *Id.* Allegations of circuit court error unrelated to the BZA's decision are reviewed pursuant to *Murphy v. Carron*. 536 S.W. 2d 30, 32 (Mo. banc 1976). We will affirm the circuit court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

## Analysis

## Ordinance Cure Provision

We first address CLA's second point on appeal as we find it dispositive of CLA's other points with the exception of CLA's open records act claim. In its second point on appeal, CLA contends, in part, that the BZA erred in upholding the City's determination that CLA was in violation of the Code and ordering immediate removal of CLA's sign because the ordinance relied upon by the City provides for a thirty-day cure period that CLA was not given.[4] We agree.

"Where the language of an ordinance is clear and unambiguous, we will give effect to the language as written[.]" *City of Clinton v. Terra Foundation, Inc.*, 139 S.W.3d 186, 189 (Mo. App. 2004) (internal quotation marks and citations omitted). In construing city ordinances, we apply the same rules as in statutory construction by giving the words their plain and ordinary meaning and pursuing the intent of the drafting body. *Id.* One rule of interpretation is that all

---

[4]CLA makes a similar argument in its third point on appeal, contending that the BZA erred in finding that the City was not required to provide CLA notice of the violation before ordering removal of the billboard. We consider this argument along with CLA's second point.

words utilized are presumed to have separate and individual meaning. *State v. Barcelona*, 463 S.W.3d 442, 451 (Mo. App. 2015). "A primary rule of construction in Missouri is that zoning ordinances are in derogation of property rights conferred by the common law, and as such should, wherever ambiguous, be strictly construed in favor of the landowner." *City of Clinton*, 139 S.W.3d at 188-189.

Section 88-445-14 of the Code contains various regulations including 88-445-14-B.5(g) which the City found applicable to CLA. 88-445-14-B.5(g) provides that, if a legal nonconforming outdoor advertising sign remains blank for a continuous period of ninety days, the sign is considered abandoned and will no longer be deemed a legal nonconforming sign. The enforcement provision for Section 88-445-14 regulations is found at 88-445-14-B.7(c) and states:

> c. The city planning and development director may order the removal of any outdoor advertising sign that is not maintained as required by this section or any sign that is not in compliance with any other provision of this section or the Code of Ordinances.
>
> 1. For an outdoor advertising sign that is not being maintained as required by this section, or a nonconforming sign that is not in compliance with the electronic or video technology requirements above, the city planning and development director must provide written notice to the signs record owner of the signs deficiencies, and the owner must be given 30 days from the date of the notice to remove the sign or bring the sign into compliance with these requirements.
>
> 2. For an outdoor advertising sign that is not in compliance with any other provision of this zoning and development code, the city planning and development director will provide written notice to the signs record owner of the signs deficiencies, and the owner must be given 30 days from the date of the notice to remove the sign.
>
> 3. The city planning and development director's determination that the sign is not in compliance with this zoning and development code may be appealed to the board of zoning adjustment within 15 days of the city planning and development director's determination.

6

CLA argues that, due to 88-445-14-B.7(c)(1)'s stated applicability being to "this section," the thirty-day cure period in 88-445-14-B.7(c)(1) applies to Section 88-445-14 in its entirety, thereby encompassing the blank sign regulations under 88-445-14-B.5(g). The BZA disagrees and argues that, due to 88-445-14-B.7(c)(1)'s use of the word "maintained" and its specific reference to nonconforming electronic/video use, 88-445-14-B.7(c)(1) is only applicable to violations of "MAINTENANCE" under subsection 6 of 88-445-14-B[5] and nonconforming electronic/video use under subsection 5(h) of 88-445-14-B. The BZA contends that 88-445-14-B.7(c)(2) is, therefore, applicable to the blank sign regulations and requires sign removal within thirty days of notice with no cure period.[6] We find CLA's interpretation of 88-445-14-B.7(c)(1) more persuasive.

In reviewing 88-445-14 in its entirety we find that, where the "MAINTENANCE" subsection of 88-445-14-B is intended to be referenced, it is denoted as "subsection 6 of this section." 88-445-14-B.5(h)(4)(a) states: "Nonconforming outdoor advertising signs must comply with *subsection 6 of this section*."[7] 88-445-14-B.5(i) also states: "Nonconforming outdoor advertising signs must comply with *subsection 6 of this section*." Where Section 88-445-14 in its entirety is referenced, "this section" is used. 88-445-14-A states: "PURPOSE: The purpose of *this section* is to preserve and promote the public health, safety, and welfare and to provide an orderly, effective, and reasonable control of off-premise signs, thereby halting sign proliferation, reducing distractions to drivers and enhancing the visual environment and

---

[5]88-445-14-B.6 states: MAINTENANCE: All outdoor advertising signs, including the sign faces, poles, supports and braces, must be kept in good repair and free from tears, rust, and other indicia of deterioration.

[6]The BZA also cites 88-445-15-C.6 which states that "[o]nce a nonconforming sign is deemed abandoned, the entire sign, including any structure which only supports the sign, must be removed within 30 days[.]"

[7]All emphases within this opinion have been added.

community character of the city." In 88-445-14-B.7(c)(1) which allows for a thirty-day cure period, "this section" is used thereby suggesting applicability to the entirety of Section 88-445-14.

Webster's Dictionary defines "maintain" as to "hold or keep any particular state or condition; to support, to sustain; to uphold; to keep up; not to suffer to fail or decline." We recognize that an alternate, common definition of "maintain" is "to keep in a state of repair, efficiency, or validity." Nevertheless, in light of our obligation to strictly construe ambiguous language in favor of the property owner, and in view of the identifying terminology used throughout Section 88-445-14, we find that "maintained" in 88-445-14-B(7)(c)(1) references the upholding of all of the provisions within Section 88-445-14 and not strictly the "MAINTENANCE" regulation of 88-445-14.6.[8] Notably, 88-445-14-B.7(c)(2), the enforcement provision immediately following 88-445-14-B(7)(c)(1) and which the BZA argues is applicable here, states: "For an outdoor advertising sign that is not in compliance with any other provision *of this zoning and development code . . . .*" It seems that if the drafters of the Code had intended to apply the thirty-day cure provision to only two provisions within Section 88-445-14, then 88-445-14-B.7(c)(2) would logically state something such as, "any other provision of this section or of this zoning and development code." In fact, in prefacing these two guidelines the ordinance does just that and makes a general statement regarding the City's authority stating: "The city planning and development director may order the removal of any outdoor advertising sign that is not maintained as required by this section, or any sign that is not in compliance with *any other*

_____

[8]As an example of the breadth of "maintained," 88-445-14-B(2)(f) requires that "[e]xposed back of signs, poles and other support structures must be painted black, dark green or dark brown presenting an attractive finished appearance which will blend with natural surroundings in order to further accomplish the objectives of this chapter." If the back of a sign was painted yellow, it could be said that the sign was not being "maintained" pursuant to 88-445-14-B(2)(f).

8

*provision of this section or the Code of Ordinances*.” 88-445-14-B(7)(c). Moreover, the references within 88-445-14 to subsections, sections, and the zoning and development code evidence purposeful distinctions.[9]

Viewing 88-445-14-B(7)(c)(1) in context and resolving any ambiguity in favor of the landowner, we find that the City must provide written notice to a sign's record owner of alleged Section 88-445-14 deficiencies and must give the sign owner thirty days from the date of that notice to bring the sign into compliance. 88-445-15-C.6 provides that, “[o]nce a nonconforming sign is deemed abandoned, it must be removed within 30 days.” We find that, pursuant to 88-445-14-B(7)(c)(1), a sign cannot be “deemed abandoned” until the sign owner has failed for thirty days after written notice to abate deficiencies set forth in Section 88-445-14. We grant the portion of CLA's second point on appeal that argues that CLA should have been given thirty days from the date of written notice to cure any alleged Section 88-445-14 deficiencies.

## Sunshine Law

In its fifth point on appeal, CLA contends that the circuit court erred in dismissing CLA's

---

[9]The fact that 88-445-14-B.7(c)(1) references applicability to “a nonconforming sign that is not in compliance with the electronic or video technology requirements above,” and the electronic or video requirements are also a part of Section 88-445-14, does not prove that a more narrow construction of the ordinance is required. The electronic and video requirements for nonconforming signs set forth in 88-445-14-B.5.h are unique in that they represent limits placed on an existing nonconforming use. Where use of electronic or video technology was part of the original use (now the legal nonconforming use) the original use is, nevertheless, now restricted by 88-445-14-B.5.h. Distinguishing nonconforming electronic or video technology requirements from maintaining the requirements set forth in the remainder of 88-445-14 is logical as the restrictions set forth in the remainder of Section 88-445-14 are mostly inapplicable to legal nonconforming signs as nonconforming signs need not follow regulations regarding sign location, size and dimension, lighting and electronic operation, etc., which are applicable to other outdoor advertising signs. However, the electronic and video technology requirements for nonconforming signs place an affirmative duty on the legal nonconforming sign owner to modify the existing use so as to comply with those requirements.

9

open records act claim because CLA stated a claim for BZA's violation of the act.[10]  CLA argues

that the court must accept the truth of the pleadings on a motion for judgment on the pleadings,

and CLA's pleadings allege that CLA forwarded, and BZA received, CLA's open records request

and BZA failed to respond to the request within three days.  The BZA counters that, because the

BZA is merely a department within the city of Kansas City, it is not a legal entity with the

capacity to be sued in an independent action such as was alleged in CLA's open records claim.

The BZA also contends that, the circuit court properly dismissed the claim because CLA failed to

allege the necessary elements to state a Sunshine Law violation.

We review a court's grant of judgment on the pleadings de novo.  *Seay v. Jones*, 439

S.W.3d 881, 887 (Mo. App. 2014).

> Review of a grant of a motion for judgment on the pleadings requires this Court to decide 'whether the moving party is entitled to judgment as a matter of law on the face of the pleadings.'  *Emerson Electric Co. v. Marsh & McLennan Companies*, 362 S.W.3d 7, 12 (Mo. banc 2012) (internal quotations omitted).  For purposes of the motion, the well-pleaded facts pleaded by the nonmoving party are treated as admitted.  *Id.* The trial court's grant of judgment on the pleadings will be affirmed only if review of the totality of the facts pleaded by the petitioner and the benefit of all reasonable inferences drawn therefrom reveals that petitioner could not prevail under any legal theory.

*Morgan v. Saint Luke's Hosp. of Kansas City*, 403 S.W.3d 115, 117 (Mo. App. 2013).

In Count IV of CLA's First Amended Petition, paragraphs 54 through 57 allege:

54.     On or about April 7, 2011, KLS forwarded KLS's sunshine request to the BZA/City Planning, a copy of which is attached hereto as Exhibit 11, and incorporated herein.

---

[10]Although we are reversing the circuit court's judgment on other grounds, because an open records act claim can involve remedies other than enforcing the production of records, such as imposing fines and/or attorney fees, it is necessary that we address this claim on appeal.  *See Bucker v. Burnett*, 908 S.W.2d 908, 912 (Mo. App. 1995).

55. The BZA/City Planning failed to timely respond to KLS's proper sunshine request, and on belief, the BZA/City Planning failed to provide all of the documents requested, and for which CLA was prosecuted.

56. Complainant has been prejudiced in Complainant's ability to prepare for the BZA hearing due to the BZA/City Planning's vexious [sic] refusal to comply with the Missouri Sunshine Act.

57. Complainant has been forced to pay certain attorney's fees to defend the actions of the BZA/City Planning, due in whole or in part to the BZA/City Planning's failure to respond to Complainant's sunshine request.

In Count II of the First Amended Petition, paragraph 28 alleges:

28. On or about April 7, 2011 and August 2, 2011, Complainant forwarded Complainant's sunshine request, pursuant to Chapter 610 of the Missouri Revised Statutes. The BZA/City Planning failed to timely respond to Complainant's request, and upon production, and on belief, the BZA/City Planning either failed to produce the BZA/City Planning's entire file, or the BZA/City Planning's file failed to contain the regulation for which CLA was cited, other than investigator, Michael Coddington's, e-mail referencing ordinance no 081033.

CLA's "sunshine request," introduced to the court as Exhibit 11, was addressed to City Planning and requested all "public records and/or documents (including electronic records) (as defined in RSMO 610.010) related to your inspection(s), investigation of the above referenced billboard, including all interoffice notes and memoranda, all pictures and a copy of your file in this matter, for the period December 2009 through the present."

In the BZA's motion for judgment on the pleadings, the BZA, among other things, argued that judgment on the pleadings was appropriate because CLA's pleadings made no allegations of a knowing or purposeful violation and, further, that all of the BZA's documents were ultimately produced as part of the BZA's Return, as required by Section 89.110, RSMo. CLA did not respond to these assertions in its Suggestions in Opposition to Respondent's Motion for Judgment on the Pleadings.

Section 610.027, RSMo Cum. Supp. 2015, provides two remedies for violation of Chapter 610. *Bucker v. Burnett*, 908 S.W.2d 908, 912 (Mo. App. 1995). It allows for the circuit court to enforce Section 610.023, and it allows for a fine and attorney fees in cases of purposeful violations. *Id.* Here, we find that if CLA's claim is that there was a purposeful violation of Chapter 610, then CLA failed to plead sufficient facts for such a violation. In *Bucker v. Burnett*, we found that the appellant's pleadings averring that officials had not provided access to requested records and had not responded fully and accurately to requests "did not define and isolate the issue of whether the officials had purposely violated the statutes." *Id.* "An official obviously can fail to give access and fail to respond fully without purposefully violating Chapter 610." *Id.* Here, we cannot find a purposeful violation allegation in CLA's averment that the "BZA/City Planning failed to timely respond to KLS's proper sunshine request, and on belief, the BZA/City Planning failed to provide all of the documents requested, and for which CLA was prosecuted." Further, we cannot conclude that CLA's bare statement, that it was prejudiced because of the BZA/City Planning's "vexious [sic] refusal to comply with the Missouri Sunshine Act," transformed the allegation into one of a purposeful violation.

Beyond this, we find that if CLA's claim was for enforcement of Chapter 610, this claim is now moot. "A cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy." *Bank of Washington v. McAuliffe*, 676 S.W.2d 483, 487 (Mo. banc 1984). It appears from the record that CLA ultimately received the records requested in its Chapter 610 request. Even if it did not, as we are reversing the circuit court's affirmation of the BZA's decision in favor of CLA, it appears that CLA would no longer need those records. CLA's fifth point on appeal is denied.

12

**Conclusion**

We conclude, therefore, that the circuit court erred in affirming the BZA's determination that CLA was not entitled to a thirty-day cure period pursuant to 88-445-14-B.7(c)(1) prior to deeming CLA's nonconforming outdoor advertising sign abandoned and ordering its removal. The judgment of the circuit court is reversed and the cause is remanded to the circuit court for entry of judgment reversing the BZA's decision.[11]

_____
Anthony Rex Gabbert, Judge

All concur.

_____

[11]As the BZA never contended that, if a thirty-day cure period was applicable, CLA still failed to bring its sign into compliance within those thirty days, we need not remand the matter for further consideration of the abandonment allegations and remand solely for reversal of the BZA's decision.

13