**Mohammed A. KABIR, M.D., Appellant,**

v.

**MISSOURI DEPARTMENT OF SOCIAL SERVICES, Respondent.**

**No. WD 41631.**

Missouri Court of Appeals,
Western District.

Nov. 21, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 2, 1990.

Application to Transfer Denied
Feb. 13, 1990.

Robert P. Baine, Jr. and Arthur Aaron Hogg, Clayton, for appellant.

Woodie J. Curtis, Jr., Div. of Legal Services, Jefferson City, for respondent.

Before BERREY, P.J., and TURNAGE and ULRICH, JJ.

BERREY, Presiding Judge.

Mohammed A. Kabir, M.D., appeals from an order of the circuit court reversing a decision of the Administrative Hearing Commission (AHC) which had held that Dr. Kabir had been improperly terminated from his participation in the Title XIX (Medicaid) Physician's Service program by the Missouri Department of Social Services. Although appellant briefs two points in this appeal only one of these points will be addressed as it is dispositive. Appellant contends that the circuit court erred in reversing the decision of the AHC as the decision of the AHC was correct in that the Department of Social Services failed to comply with its own regulations by failing to utilize the correct review methodology.

Appellant, Dr. Kabir, is a doctor of medicine who holds a license to practice in Missouri pursuant to Chapter 334, RSMo 1986, and is a Missouri Medicaid Provider identified by provider number 200110500. His offices are located in Crestwood, Missouri, and he provides psychiatric services at various hospitals in the St. Louis area.

In early 1983, respondent conducted a review of appellant's Medicaid claims and notified appellant of an overpayment calculated at $29,447. Over the following year respondent attempted to clarify Medicaid requirements for appellant's billing proce-

dures. The parties reached an agreement dated May 22, 1984, wherein Dr. Kabir agreed to certain conditions regarding his submission of claims.

In the summer of 1985, Special Agent John Dye, an investigator with the Missouri Department of Social Services, conducted a further review of Dr. Kabir's records, following an interview with an ex-employee of Dr. Kabir's indicating that the doctor was still not following correct record-keeping procedures. Special Agent Dye reviewed a non-random sample of Dr. Kabir's Medicaid claims consisting of thirteen patient's medical records. Based upon this review, Dye recommended termination. The agency sent Dr. Kabir a letter dated March 19, 1986, terminating his participation in the Medicaid program.

On April 16, 1986, Dr. Kabir filed a complaint requesting a hearing before the AHC. A hearing before the AHC was held on May 20, 1987. Neither the doctor nor his counsel appeared at this hearing.[1] Evidence was taken from agency witnesses and the record was closed. Appellant subsequently moved for the record to be reopened and requested a hearing. This motion was granted and, on September 25, 1987, a hearing was held wherein appellant presented evidence and the agency presented rebuttal to such evidence.

On April 18, 1988, the Honorable James Deutsch issued a statement of the case, findings of fact, conclusions of law, and decision which concluded that Dr. Kabir had been improperly terminated from participation in the Medicaid program.

The decision of the AHC was appealed to the circuit court of Cole county. The circuit court reversed the decision of the AHC. This appeal followed.

Review by this court is of an agency or board's decision and not that of the circuit court. *Welty v. State Board of Chiropractic Examiners*, 759 S.W.2d 295, 297 (Mo.App.1988). "Review is limited to a determination of whether the decision was in excess of agency jurisdiction, supported by competent and substantial evidence on the

---

1. Dr. Kabir's counsel died before this proceeding and apparently Dr. Kabir was not well instructed as to what his position was as to this first hearing.

whole record, or whether the decision rendered was arbitrary, capricious or unreasonable." *Id.* at 297–98. Furthermore, it should be noted that a review of the AHC's decision is to be considered in the light most favorable to that decision, along with all reasonable inferences which support it. *Id.* at 298.

The AHC found Dr. Kabir's termination to be improper. In his conclusions of law, Commissioners Deutsch concluded that the decision to terminate was erroneous in three respects: (1) the review methodology was improper; (2) the agent's selection of which records to use was unauthorized; and (3) respondent failed to provide appellant with the ten days written notice required before termination.

Appellant's termination was based upon an alleged violation of 13 CSR 40–81.-160(A)(2)4 and 17:[2]

(2) Program Violations.

(A) Sanctions may be imposed by the single-state agency against a provider for any one (1) or more of the following reasons:

4. A provider must make available, and disclose to the single-state agency or its authorized agents, all records relating to services provided to Medicaid recipients and payments therefore, whether or not the records are commingled with non-Title XIX records. Failure to make these records available on a timely basis at the same site at which the services were rendered or failure to keep and make available adequate records which adequately document the services and payments shall constitute a violation of this section and shall be a reason for sanction hereunder;

17. Failure to correct deficiencies in provider operations within ten (10) days after receiving written notice established by a signed receipt of delivery of these deficiencies from the single-state agency or within the time frame provided from any other agency having licensing or certification authority;

The regulations provide for a statistical sampling method to compute provider over-

payment.[3] This method was not followed by Special Agent Dye in the instant case. Dye testified that he "did not use a true random sample," and that he "didn't use the formula specified in the regulation." Instead, Dye targeted the thirteen cases that he actually did review. He stated, "I just simply went into my computer and pulled up some claims off of the computer which had been paid or not paid that were showing on the information I had, pulled up copies of those individual claims and went out into the filed to review medical records. . . ." He explained that his review was based upon the agreement that the Department had entered into with Dr. Kabir and that the agreement didn't specify a random sample.

■ "Administrative agencies, just as the general public, are bound by the terms of rules promulgated by them." *Berry v. Moorman Mfg. Co.*, 675 S.W.2d 131, 134 (Mo.App.1984). There is nothing in the agreement between the agency and Dr. Kabir which authorized a different method of sampling than that found in the regulations. No waiver of the rule was made by Dr. Kabir. If the purpose of such a rule is to provide a vehicle for fair and impartial review of Medicaid claims, Dye certainly violated both its letter and its spirit by his own unauthorized review, a review which lead him to recommend Dr. Kabir's termination.

At the September 25, 1987, hearing, Dr. Kabir's expert Phillip Beard, a senior consultant for the public accounting firm of Baird, Kurtz and Dobson, presented testimony based on his review of the records. Unlike Special Agent Dye, Beard did not limit his review to medical records. He found that, for the most part, the problems indicated by Dye, could be explained. In fact, Beard even found one instance of an underpayment to appellant. He testified that Dr. Kabir's record keeping was well within the norm judging by his experience.

■ Respondent argues that it was within the agency's discretion to reject the sampling method found in the regulations and cites *Citizens For Rural Preservation,*

---

**2.** Now renumbered as 13 CSR 70–3.030(A)(2)4 and 17.

**3.** 13 CSR 40–81.161, now renumbered as 13 CSR 70–3.130.

*Inc. v. Robinett,* 648 S.W.2d 117, 128 (Mo. App.1983), which points out the deference this court must pay to the expertise of an agency when dealing with decisions based upon scientific or technological data. However, the methods used to review Dr. Kabir's claims certainly are not within the latitude prescribed by *Robinett.* Far from using a complex, very technical determination of Dr. Kabir's compliance with the regulations, Dye simply targeted thirteen files for review.

■ Respondent also points out that, "the failure of an agency to comply with its own rules may invalidate its actions only when prejudice results." *Missouri National Education Assoc. v. Missouri State Board of Mediation,* 695 S.W.2d 894, 897 (Mo.banc 1985). It is difficult to comprehend how respondent can claim that Dr. Kabir was not prejudiced by the very limited review done by Special Agent Dye. This prejudice is made all the clearer when factoring in the failure of the agency to provide Dr. Kabir with the requisite ten day notice before termination as he had no chance to explain or clear up any of the irregularities found by Dye. This certainly prejudiced him. Nor does the agreement between Dr. Kabir and the agency provide any excuse for the lack of notification. More than a year had elapsed between the agreement and the reinvestigation by Dye. The regulations do not provide for only one notification of a provider, they quite clearly state that, "Sanctions may be imposed by the single-state agency against a provider for any one (1) or more of the following reasons: ... 17. Failure to correct deficiencies in provider operations *within the (10) days after receiving written notice."* 13 CS 40–81.160(A)(2)17 (emphasis added).

The Commission's decision was supported by competent and substantial evidence based upon the whole record and was neither arbitrary, nor capricious given the agency's noncompliance with its own regulations.

■ One final issue needs to be addressed. Respondent claims, based upon certain remarks of the commissioner, that the burden of proof was improperly placed upon the agency, shifting it from where it properly belongs, on Dr. Kabir. Respon-

dent points to the time lag between the two hearings and characterizes Dr. Kabir's second hearing as a rebuttal of the evidence presented in the first hearing. The circumstances of this case are indeed unusual and the time lag between the two hearings unfortunate. In his order granting appellant's motion to reopen the hearing, the Commissioner ordered that the matter be "reopened for the sole purpose of hearing the evidence of Petitioner in support of his position in this matter. Respondent may present evidence in rebuttal thereto." The agency's own evidence in the first hearing established the violations enforcing their own regulations. A review of both transcripts and the wording of the Commissioner's order suggest that the burden had not been improperly shifted and thus no reason for reversing the AHC on this ground exists.

Therefore, because the AHC's decision was neither arbitrary nor capricious, and based upon substantial and competent evidence upon the whole record, the judgment of the circuit court is reversed and the cause remanded to the circuit court to reinstate the decision of the AHC.

All concur.