STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-01-05

ROY AND PATRICIA HOPKINS,

        Petitioners,

v.

                                         ORDER ON 80C APPEAL

DEPARTMENT OF HUMAN
SERVICES,

        Respondent.

The petitioners, Patricia and Roy Hopkins, have appealed the final administrative action by the Department of Human Services (DHS), pursuant to M.R. Civ. P. 80C. The petitioners assert DHS improperly terminated the Hopkins' Medicaid benefits. Upon reviewing the Hopkins' petition, DHS's response, the certified record and the applicable law, the petitioners' requested relief will be denied.

## FACTUAL BACKGROUND

The petitioners are disabled individuals whose sole income is social security benefits. Petitioners' joint gross monthly income is $1520.50. After the state and federal disregard[1], their net monthly income is $1420.50. Each of their two children

---

[1] In calculating income for purposes of determining eligibility for Medicaid coverage, twenty dollars a month is deducted from the couple's gross income under the federal disregard, and eighty dollars a month is deducted from the couple's gross income under the state disregard. Maine Medicaid Eligibility Manual §§ 3440.01, 3530.03.

receives $424.00 per month in benefits. The total family gross income is $2368.50, which is classified as unearned income. Based on this income level, DHS served Roy Hopkins with notice that the Hopkins' Medicaid coverage would be closed and a six-month deductible[2] would now be applicable to the petitioners' Medicaid benefits. The petitioners challenged the imposition of a deductible, but the decision was upheld by a hearing officer.

The petitioners assert they were not afforded due process in the imposition of the deductible. Specifically, the petitioners assert that the process was insufficient because the notice did not contain the specific provision relied upon in changing the Medicaid benefits, and the hearing officer failed to inquire as to whether the petitioners had sought the advice of counsel. In addition, eleven days before the scheduled hearing, the petitioners first raised, over the objection of DHS, the issue of whether the petitioners could have reduced their social security benefits for "good cause" under 42 C.F.R. § 435.608, so that they would have continued to qualify for Medicaid benefits.

---

2 Where the recipients' monthly income exceeds the maximum incomes allowable for Medicaid coverage, a six month deductible is calculated by multiplying by six the quanity of countable income less the protected income level. Maine Medicaid Eligibility Manual § 6000. Here, the Hopkins' countable income ($1420.50) less the protected income level ($341.00) multiplied by six (6), gives a six month deductible of $6477.00. The petitioners' health care costs are countable against the deductible, such that if their medical expenses exceed the deductible, Medicaid will cover the surplus expenses.

2

## DISCUSSION

I.    Due Process

A.    The Federal Regulations

Under 42 C.F.R. § 431.206(b), before a Medicaid agency takes action to suspend, terminate, or reduce services, the agency must inform the recipient in writing (1) of his right to a hearing, (2) of the method by which he may obtain a hearing, and (3) that he may represent himself or use legal counsel, a relative, a friend, or other spokesman.  The agency must provide this information at the time of any action affecting the recipient's claim.  42 C.F.R. § 431.206(c)(2).  The notice must contain: (a) a statement of what action the state intends to take; (b) the reasons for the intended action; (c) the specific regulations that support the action; (d) an explanation of the individual's right to request a hearing; and (e) an explanation of the circumstances under which Medicaid is continued if a hearing is requested.  42 C.F.R. § 431.210.

B.    The State Rules

Pursuant to the Maine Medicaid Eligibility Manual, Appendix A, the purpose of a hearing "is to review whether the Agency acted in accord with defined policy and procedural requirements in carrying out its actions."  Me. Dep't of Hum. Serv. Reg. 10 144 332; Me. Medicaid Eligibility Manual, App. A.[3]  The hearing officer is charged with reviewing whether the appropriate procedures were followed in carrying out the action.  Id.  The "Eligibility Specialist" must determine whether

_____

3 Only the Maine Medicaid Eligibility Manual section will be provided in subsequent cites.

3

proper notice was given to the recipient. Id. The notice "must cite the manual section on which the decision to deny or reduce benefits is based." Me. Medicaid Eligibility Manual, App. A. In addition, if there is to be a hearing, the Eligibility Specialist must prepare a detailed report of what was done and why it was done, including information as to how income was determined. Id. A copy of the report must be sent to the individual who requested a hearing before the hearing is held. Id. Issues such as adequate and specific notice may be raised on appeal even if not mentioned at the hearing. Id.

C.     Failure to Provide Specific Sections Under Which Benefits Were Being

Terminated

As set out above, under both federal regulations and state rules, the hearing notice must include the specific regulations that support the action taken by the agency. 42 C.F.R. § 431.210; Me. Medicaid Eligibility Manual, App. A. In addition, the state requires that a detailed report, including information as to how income was determined, be sent to the recipient before the hearing is held. Me. Medicaid Eligibility Manual, App. A.

The Fair Hearing Report does not contain information about how income was determined. See Record Document HO 1, pp. 4-5.

The Fair Hearing Report cites, as the relevant rules, Maine Medicaid Eligibility Manual §§ 2000, 2400, 3000, 3400, 3500, 4200-4500, 5060, 6000, and 9000. See Record Document HO 1, p. 4. In calculating the petitioners' income, the hearing officer referenced Maine Medicaid Eligibility Manual, §§ 3420, 3440, pp. 145-146, and

4

§ 3520.01, p. 151. See Fair Hearing Decision p. 2. In comparing the petitioners' income with the eligibility cutoffs, the hearing officer referenced Me. Medicaid Eligibility Manual, § 3520, p. 150, and § 6000, p. 218. See Fair Hearing Decision p. 2. The court finds that, rather than citing the specific subsections as required, the Fair Hearing Report cited only the general sections.

D.    Prejudice

Because DHS did not strictly comply with the applicable rules, the court must determine whether the petitioners must prove only non-compliance with the rules and regulations in order to invalidate the agency's action, or whether the petitioners must establish that they were prejudiced by the non-compliance. Other courts have held that the failure of an agency to comply with its own rules only invalidates its actions if prejudice resulted. Kabir v. Missouri Department of Social Services, 782 S.W. 2d 706 (Mo. Ct. App. 1989) (ultimately determining that Dr. Kabir was necessarily prejudiced by failing to receive ten days' notice before termination as a provider in the Medicaid program, where he could have brought his practice in compliance with the regulations and thus avoided termination); see also Liberty Testing Laboratory, Inc. v. Perales, 188 A.D.2d 762 (N.Y. App. Div. 1992) (refusing to invalidate the agency action where the medicaid provider was not prejudiced by the defective notice because the effective date of the termination was corrected when the agency learned of the mistake); Vaynshelbaum v. Dowling, 237 A.D. 2d 132 (N.Y. App. Div. 1997) (notice was reasonably specific and petitioner did not establish prejudice); Bermudez v. McIntire, 1999 WL 1441920 (Mass. Super. Ct.) (defect in

5

notice will not affect the validity of a hearing to terminate transitional aid if the notice defect caused no prejudice).

The court finds these opinions persuasive. The rules and regulations were put into place to insure protection of the rights of aid recipients, and to prevent wrongful termination of benefits. Where recipients are not prejudiced by an agency's failure to strictly comply with the rules, the recipients should not be permitted to use the rules to delay the termination of benefits to which the recipients are no longer entitled. Accordingly, the court concludes that the petitioners are required to show that they have been prejudiced by DHS's non-compliance with the cited rules in order to invalidate the agency's action.

The petitioners do not assert that they actually qualify for Medicaid with their current income levels. The petitioners do not assert that DHS incorrectly calculated their income or the deductible. Mr. Hopkins conceded, during the hearing, the correctness of the calculations associated with DHS's decision. See Record Doc. A, Hearing Transcript pp. 18-20. The petitioners assert that the "defective" notice deprived them of their ability to prepare for the hearing. However, there has been no assertion that additional preparation could have changed the outcome of the hearing - the petitioners receive too much unearned income, and therefore must be put on the deductible plan. The deductible plan has harsh consequences for the petitioners, but this cannot be ameliorated by a more specific notice of the fair hearing. Accordingly, the court concludes that the petitioners have not shown the prejudice necessary to invalidate DHS's action.

E.    Failure to Inquire as to Whether the Petitioners Had Sought the Advice of Counsel.

The petitioners have not directed the court to any regulatory provision or rule that instructs the hearing officer to inquire whether the recipient has sought the advice of counsel. Rather, the petitioners urge the court to conclude that the right at stake here - the right to Medicaid benefits - is so important that the hearing officer be required to inquire as to whether the petitioner sought the advice of counsel. Congress has already acknowledged the importance of the right at issue by requiring the acting agency to advise recipients of their right to be represented by an attorney or another person. 42 C.F.R. § 431.206(b). DHS complied with this requirement and went further, including in the notice a list of the petitioners' fair hearing rights and information directing the petitioners to free legal services. See Record Document HO 1, pp. 2-3. Accordingly, the DHS provided the petitioners with adequate information about their options for representation.

II.    "Good Cause" Reduction of Benefits to Qualify for Medicaid

Under the federal regulations:

> [a]s a condition of eligibility, the agency must require applicants and recipients to take all necessary steps to obtain any annuities, pensions, retirement, and disability benefits to which they are entitled, *unless they can show good cause for not doing so.*

42 C.F.R. § 435.608(a) (emphasis added). Under state rules:

> [i]ndividuals must take all appropriate steps to obtain benefits to which they are entitled. This includes applying for the benefit and providing the other benefit source with necessary information to determine eligibility for the benefit.

7

Me. Medicaid Eligibility Manual § 1270. Other benefits for which the individual must file include Social Security. The petitioners assert that the failure of DHS to adopt the federal "good cause" exception has precluded the petitioners' from presenting a "good cause" argument to reduce their social security benefits.

It appears that the petitioners are correct, in that DHS should not require the petitioners to apply for all benefits available to them (if there is good cause for not doing so) before determining whether the petitioners qualify for Medicaid benefits. However, the petitioners do not assert that they lost Medicaid coverage because they failed to apply for benefits available to them. The petitioners do not assert that they have attempted to effect a reduction in their benefits at all. In addition, the petitioners do not assert that they applied for the maximum available benefits because required to under Maine Medicaid rules. The petitioners have failed to state a cognizable injury for which judicial review is appropriate.

## CONCLUSION

The petitioners did not establish that they were prejudiced by DHS's failure to strictly comply with the rules governing fair hearing notices. Furthermore, the petitioners did not establish that DHS was required to inquire as to whether the petitioners sought the advice of counsel. Finally, the petitioners did not allege that they were denied Medicaid coverage because they refused to apply for benefits for which they were eligible. Accordingly, the petitioners' challenge of the DHS action must fail.

8

The entry is

The decision of the Maine Department of Human Services is AFFIRMED.

Dated at Portland, Maine this 17th day of January 2002.

Robert E. Crowley
Justice, Superior Court