Michael PHILLIPS, Appellant,

v.

Keith SCHAFER, Director of Missouri Department of Mental Health; and Beth Viviano, Patricia Bolster, Kathy Carter, David Vlach, Joann Leykam, Members of Missouri Mental Health Commission; and Missouri Department of Mental Health, Respondents.

No. ED 96077.

Missouri Court of Appeals, Eastern District, Division Four.

July 12, 2011.

Christopher M. Smith, The Smith Partnership, St. Louis, MO, for Appellant.

Chris Koster, Attorney General, Michael R. Cherba, Assistant Attorney General, Jefferson City, MO, for Respondents.

KURT S. ODENWALD, Presiding Judge.

## Introduction

Petitioner Michael Phillips (Phillips), a program manager employed by Community Alternatives Missouri (CAMO), appeals from the decision of the Department of Mental Health Hearing Administrator determining that two counts of verbal abuse were substantiated against him. Phillips claims that the Department of Mental Health (DMH) erred in finding him guilty of both counts of verbal abuse against two separate "consumers" because DMH misapplied and ignored the DMH definition of verbal abuse. Finding substantial evidence to support DMH's decision, we affirm.

## Factual Background

Phillips has worked in the field of providing care for the disabled for more than twenty years. In August and September 2006, Phillips was employed by CAMO, a community agency that contracted with the St. Louis Regional Center–North and DMH to provide services to DMH clients, who are afflicted with mental retardation or developmental disabilities. The St. Louis Regional Center–North provides service coordination, funding, and oversight to CAMO. During the relevant time period, CAMO provided twenty-four-hour supervision and habilitation services to

DMH clients, including L.S. and M.M.[1], in a setting known as Individualized Support Living. Phillips worked as program manager for CAMO and provided direct care support services to consumers L.S. and M.M.[2]

On March 13, 2007, Anita Contreras, Director of DMH's St. Louis Regional Center–North, sent Phillips a letter substantiating two counts of verbal abuse against him. Phillips requested a hearing before a DMH Hearing Administrator. A hearing was held, during which the following evidence was adduced:

### Consumer L.S.

One count of verbal abuse against Phillips involved L.S., who lived in a home called Periwinkle House, for which CAMO provided services. Phillips was alleged to have withheld money from L.S. and to have told L.S. that he was withholding L.S.'s personal money. This conduct was alleged to be a non-therapeutic action outside of L.S.'s person-centered plan or behavioral support plan. L.S. was approximately thirty years old but had the mental functioning of a twelve to fifteen-year-old. L.S. was diagnosed with mild mental retardation, psychotic disorder and depression. L.S. had a history of hearing voices that he believed encouraged him to kill himself and/or others. Phillips had worked with L.S. for approximately three years prior to the incident in question.

On Wednesday, August 16, 2006, Phillips told L.S. that on the following Saturday, he would bring L.S. money to buy Chinese food. Around noon on Saturday, August 19, 2006, Diane Hammond (Hammond), CAMO support staff, overheard L.S. speaking with Phillips on the telephone to remind Phillips to bring money to Periwinkle House so that L.S. could buy Chinese food. L.S. told Hammond that Phillips said if L.S. called him again, L.S. would get nothing. L.S. looked forward to receiving the money for Chinese food so much that he ate nothing after 8 a.m. that day so that he could eat a lot at the restaurant. Another community support worker, Diane Ivy (Ivy), testified that when she arrived at Periwinkle House for her 4 p.m. shift, L.S. told her that he was hungry. Ivy cooked L.S. some rice, which L.S. ate. When Phillips arrived at Periwinkle House sometime between 4 and 5 p.m., he saw that L.S. was eating the rice and refused to give L.S. the money for Chinese food. Phillips told L.S. that he would not get his money to go out for Chinese food because he was already eating. Phillips told L.S. that because L.S. was on a diet, Phillips did not want him to eat extra food. L.S. was not happy. During the visit, Phillips gave money to the two other residents living at Periwinkle House. L.S. accompanied those other residents for them to buy Chinese food later that evening.

After Phillips left Periwinkle House on August 19, 2006, L.S. became upset. L.S. yelled, paced and knocked over items in the house for about 15 or 20 minutes. L.S. stated that he was upset because Phillips did not give him his money. Ivy called Phillips to return to Periwinkle House to help with L.S. L.S. was so upset by Phillips's refusal to give him the money that it contributed to L.S.'s admission, shortly thereafter, to Metropolitan St. Louis Psychiatric Center, an inpatient psychiatric center, where he remained for the next eleven months.

---

1. All clients are referenced by their initials to protect their privacy.

2. A "consumer" is an individual (client, resident, patient) receiving DMH-funded services directly from an agency. 9 CSR 10–5.200.1(B).

## Consumer M.M.

The other count of verbal abuse against Phillips involved M.M., who lived in a home called Stoney End House, for which CAMO also provided services. M.M. was 54 years old and was diagnosed with moderate mental retardation and impulse control disorder. Phillips had worked with M.M. since M.M. came to CAMO, approximately four or five years earlier.

On September 18, 2006, Phillips was at Stoney End House and called M.M. out of his bedroom to the kitchen. Phillips previously had brought a small container of ice cream to Stoney End House and stored it in the freezer. Phillips asked M.M. to tell him about that ice cream, which then was sitting on the kitchen counter. When M.M. came out of his room, Phillips asked M.M. if the ice cream was M.M.'s. Phillips repeated himself, and also asked M.M. whether he was going to eat the ice cream. M.M. appeared confused by Phillips's questions. Phillips and another CAMO support staff worker, Linda Williams (Williams), laughed at M.M.'s confusion. M.M. moved his head from side to side, looking around and trying to figure out what to do. A nurse who was working at Stoney End House at the time, Margie Diekemper (Diekemper), testified that Phillips's voice was loud when he called M.M. from his room, and that the subsequent conversation with him was loud.

Phillips told M.M. that M.M. needed a spoon for the ice cream, and again asked M.M. if he was going to eat it. M.M. got a spoon, still confused. Phillips asked M.M. "where's my spoon," and M.M. again looked confused, but began to eat the ice cream. When M.M. had eaten about half, Phillips asked, "hey, what about me? That's my ice cream. Aren't you saving any of that ice cream for me?" Neither M.M. nor Diekemper laughed when Phillips and Williams laughed during this incident. Phillips testified that this was an example of how he and M.M. played with each other. Phillips also testified that he was laughing with M.M., not at him.

## DMH Disqualification

Following the hearing, DMH issued a decision, dated October 12, 2007, determining that the two counts of verbal abuse were substantiated against Phillips. When DMH substantiates that a person has perpetrated two counts of verbal abuse within a twelve-month period, that person shall not be employed by DMH, nor be licensed, employed, or provide services by contract or agreement at a residential facility, day program, or specialized service that is licensed, certified, or funded by DMH.

Phillips thereafter filed a Petition for Judicial Review, and the trial court affirmed the decision of DMH's Hearing Administrator. Phillips then filed a notice of appeal to this Court. This appeal follows.

## Points on Appeal

Phillips raises two points on appeal. In his first point, Phillips argues that DMH erred in its decision that Phillips was guilty of verbal abuse of L.S. because, under Section 536.140.2, RSMo Cum.Supp. 2009 [3], such decision was arbitrary, capricious, and unreasonable. Phillips argues that DMH misapplied and ignored its own rule of law, its definition of verbal abuse, when DMH determined that Phillips's "non-therapeutic action" of withholding money from L.S. fell within the definition of verbal abuse and, as a result of that

---

3. Unless otherwise indicated, all subsequent statutory citations to Section 536.140 are to

RSMo Cum.Supp.2009.

determination, placed Phillips on DMH's Disqualification Registry.

In his second point, Phillips argues that DMH erred in its decision that Phillips was guilty of verbal abuse of M.M. because, under Section 536.140.2, such decision was arbitrary, capricious, and unreasonable. Phillips argues that DMH misapplied its own rule of law, its definition of verbal abuse, because the facts found by DMH failed to show that Phillips's manner of speaking to M.M. was "demeaning, non-therapeutic, and undignified" or otherwise within the definition of verbal abuse, yet DMH determined that Phillips was guilty of verbal abuse and, as a result of that determination, DMH placed Phillips on DMH's Disqualification Registry.

## Standard of Review

Appellate review of a decision in an agency contested case is set forth in Section 536.140. Under this standard, DMH's decision will be upheld unless it (1) is in violation of constitutional provisions; (2) is in excess of the statutory authority or jurisdiction of the agency; (3) is unsupported by competent and substantial evidence upon the whole record; (4) is, for any other reason, unauthorized by law; (5) is made upon unlawful procedure or without a fair trial; (6) is arbitrary, capricious or unreasonable; or (7) involves an abuse of discretion. Section 536.140.2. On appeal from the circuit court's review of an agency's decision, this Court reviews the action of the agency, not the action of the circuit court. *Albanna v. State Bd. of Registration for Healing Arts*, 293 S.W.3d 423, 428 (Mo. banc 2009). This Court must decide whether, considering the whole record, there is sufficient competent and substantial evidence to support the agency's actions. *Id.* "This standard would not be met in the rare case when

the [agency's decision] is contrary to the overwhelming weight of the evidence." *Id.*, quoting *Lagud v. Kansas City Bd. of Police Comm'rs*, 136 S.W.3d 786, 791 (Mo. banc 2004). The decision of the agency on factual issues is presumed to be correct until the contrary is shown and the court is obliged to sustain the administrative order if it is supported by substantial evidence on the record as a whole. *Oakes v. Mo. Dept. of Mental Health*, 254 S.W.3d 153, 157 (Mo.App. E.D.2008). The court must defer to the agency's determination on the credibility of witnesses. *Martin Marietta Materials, Inc. v. Bd. of Zoning Adjustment of Cass County*, 246 S.W.3d 9, 19–20 (Mo.App. W.D.2007). However, when the agency's decision involves a question of law, the court reviews the question de novo. *Oakes*, 254 S.W.3d at 157.

## Discussion

*Point I—Substantial evidence supports DMH's finding of verbal abuse against L.S.*

In his first point, Phillips argues that DMH ignored the content and context of the definition of verbal abuse when it based its finding on the "withholding of money or threat of withholding of money." Phillips argues that DMH, in rendering its decision, mistakenly focused on Phillips's actions in withholding money from L.S., as opposed to his "speaking" to L.S. about withholding the money. In doing so, Phillips asserts that DMH has expanded the definition of verbal abuse. Further, Phillips argues that he did not threaten to withhold money from L.S., but simply did not give the money to L.S. Phillips contends that DMH's failure to follow its definition of verbal abuse resulted in a decision that was arbitrary, capricious and unreasonable. We disagree.

Under the standard of review prescribed by Section 536.140, whether a decision is

"arbitrary" focuses on whether an agency had a rational basis for its decision. *Bd. of Educ. of City of St. Louis v. Mo. State Bd. of Educ.*, 271 S.W.3d 1, 11 (Mo. banc 2008). Additionally, "capriciousness" as a basis for reversing an administrative decision concerns whether the agency's action was whimsical, impulsive, or unpredictable. *Id.*

■ Administrative agencies, just like the general public, are bound by the terms of the rules promulgated by them. *Kabir v. Mo. Dept. of Social Servs.*, 782 S.W.2d 706, 708 (Mo.App. W.D.1989). According to DMH's regulations, 9 CSR 10–5.200, verbal abuse is defined as

> An employee using profanity or speaking in a demeaning, non-therapeutic, undignified, threatening, or derogatory manner to a consumer or about a consumer in the presence of a consumer.

Phillips argues that his case is comparable to *Perry v. City of St. Louis Civil Service Commission*, 924 S.W.2d 861, 864–65 (Mo.App. E.D.1996), where this Court found the St. Louis Civil Service Commission misapplied its own rule of law in defining "residence." Phillips claims that DMH similarly expanded the scope of its definition of "verbal abuse" by misapplying it own rule. Contrary to Phillips's argument, we do not find an expansion of the definition of verbal abuse by DMH beyond the scope of its rule because the record supports a finding that Phillips spoke to L.S. in a demeaning, non-therapeutic, undignified, threatening or derogatory manner.

The record clearly supports DMH's decision that Phillips told L.S. he was not giving L.S. his money, and in fact withheld money from L.S. When considering the totality of the circumstances, we hold that Phillips's conduct fell within the definition of verbal abuse because there is sufficient evidence to support DMH's decision that Phillips spoke in a "demeaning, non-therapeutic, undignified, threatening, or derogatory manner to a consumer or about a consumer in the presence of a consumer." 9 CSR 10–5.200. This Court defers to the agency's determination on the credibility of witnesses. *Martin Marietta Materials, Inc.*, 246 S.W.3d at 19–20. DMH found the testimony of the other support staff witnesses present at the time of the incident between Phillips and L.S. more credible than the testimony of Phillips. We defer to DMH's credibility determinations.

The record contains substantial evidence supporting DMH's decision. Evidence was introduced that Phillips told L.S. that he was going to give him money for Chinese food. Later Phillips told L.S. he would not give him that money if he called him again. Afterward, when Phillips arrived at Periwinkle House, he told L.S. that he was not giving L.S. the money because L.S. was already eating and on a diet. Although Phillips claims that he explained to L.S. his reasoning for withholding the money, the record contains evidence that DMH, as a practice, did not allow the withholding of a consumer's personal allowance, and that withholding a consumer's allowance, if allowed, would be described specifically in the consumer's care plan. There is no evidence in the record that L.S.'s care plan allowed Phillips or anyone else to withhold L.S.'s personal allowance as a behavior "re-enforcer." The record supports a finding that Phillips's explanation did not justify his words and actions. Phillips threatened L.S. first by telling him if he called again, he would not get his money. Phillips subsequently told L.S. he would not give him his personal money. In doing so, Phillips acted outside of L.S.'s specific support plan. DMH determined L.S.'s speech and actions in this regard were demeaning and non-therapeutic to L.S. given his di-

agnoses. Phillips's words and actions directly resulted in L.S.'s admission to an inpatient psychiatric center, where he remained for the next eleven months. Phillips claims the DMH decision was based upon his actions alone, thereby rendering the DMH decision arbitrary and capricious. We disagree with Phillips as we are unable to reasonably separate Phillips's words from his conduct. Phillips used words threatening to withhold L.S.'s personal allowance. Phillips's subsequent action of withholding the money puts his speech in context. When viewing the totality of the circumstances and placing Phillips's speech and actions in context, these facts constitute substantial evidence to support DMH's finding that Phillips committed verbal abuse by speaking to L.S. in a demeaning, non-therapeutic, undignified, threatening or derogatory manner. While we acknowledge that Phillips contends he intended to act in the best interest of L.S. in withholding his personal allowance, we must defer to the credibility determinations of DMH, which found otherwise. We are correspondingly restricted in our ruling and hold that the DMH decision was not arbitrary or capricious.

Phillips's first point is denied.

*Point II—The record substantiates DMH's finding of verbal abuse against M.M.*

In his second point, Phillips argues that DMH erred in finding Phillips guilty of verbal abuse against M.M. because the record does not support a showing that Phillips's manner of speaking to M.M. was demeaning, non-therapeutic, or undignified. Phillips supports his argument by citing his own testimony that he was playing with M.M., that he did not think M.M. was confused, he did not laugh at M.M., and he did not recall using a loud voice during the exchange. Phillips's argument fails to acknowledge our limited standard of review and that we are bound by the agency's determinations of credibility. We do not find the agency regulations at issue here.

As discussed above, this Court defers to the agency's determination on the credibility of witnesses. *Martin Marietta Materials, Inc.*, 246 S.W.3d at 19–20. Upon our review of the record, we find that substantial evidence supports DMH's decision. DMH found the testimony of the other support staff members more credible than the testimony of Phillips. Diekemper testified that Phillips repeatedly asked M.M. in a loud voice if he was going to eat the ice cream and whether the ice cream was his. Diekemper testified that this exchange was confusing to M.M. Diekemper testified that Phillips and another worker laughed out loud at M.M. DMH found this testimony more credible than Phillips's testimony that he was just "playing" with M.M. and that M.M. understood that. These facts constitute substantial evidence to support DMH's finding that Phillips spoke to M.M. in a "demeaning, non-therapeutic, and undignified" manner and that Phillips teased and taunted M.M. While we acknowledge Phillips's explanation that he was acting in a playful and not demeaning manner towards M.M., we are not persuaded that the DMH could not reasonably reach a contrary conclusion from the evidence before it. Given such evidence, we will not hold the DMH decision to be arbitrary or capricious. We find no error in the DMH Hearings Administrator's decision to substantiate this second count of verbal abuse against Phillips and place his name on the DMH Disqualification Registry.

Phillips's second point is denied.

### Conclusion

The decision of the Department of Mental Health Hearings Administrator is affirmed.

ROBERT G. DOWD, JR., J., and KEITH M. SUTHERLAND, Sp. J., Concur.