

# In the Missouri Court of Appeals
# Eastern District

**DIVISION ONE**

| | | |
|---|---|---|
| STATE ex rel. MARTIN C. HECK JR. AND VICTORIA HECK d/b/a PACIFIC MOBILE MANOR, | ) ) ) ) | No. ED108730 |
| Respondents, | ) ) | |
| | ) ) | Appeal from the Circuit Court of Franklin County |
| vs. | ) ) | Cause No. 19AB-CC00101 |
| CITY OF PACIFIC AND CITY OF PACIFIC BOARD OF ZONING ADJUSTMENT, | ) ) ) | Honorable Craig E. Hellmann |
| Appellants. | ) ) | Filed: November 3, 2020 |

## OPINION

The City of Pacific (the "City") and the City of Pacific Board of Zoning Adjustment (the "Board") appeal the circuit court's judgment granting the petition for writ of certiorari filed by Martin C. Heck, Jr., ("Mr. Heck") and Victoria Heck d/b/a Pacific Manufactured Manor (collectively, "Respondents") and reversing the Board's decision finding that Respondents could not continue operating a manufactured home park on their property because Respondents could no longer claim such operation as a valid non-conforming use under the City's zoning and floodplain ordinances.[1] Respondents raise four points arguing that the Board's determination that

---

[1] Pursuant to Rule 84.05(e), although the City and Board are technically the "appellants" in this case, Respondents properly filed the initial brief asserting points relied on and a reply brief arguing why the decision of the Board (an administrative agency) was erroneous.

1

Respondents' operation of the manufactured home park on their property was no longer a valid non-conforming use under the City's zoning ordinances was unauthorized by law and unsupported by competent and substantial evidence.

This Court finds that the Board's decision was authorized by law and supported by competent and substantial evidence in all regards but one; specifically, the Board's denial of Respondents' appeal of the City's denial of/refusal to grant the occupancy permit for the manufactured home at 311 Second, South Street, Pacific, Missouri was unsupported by competent and substantial evidence. We reverse the judgment of the circuit court granting Respondents' petition for writ of certiorari and remand the case to the circuit court with instructions to enter judgment consistent with this opinion.

## I. Factual and Procedural Background

The following facts were adduced from evidence presented before the Board during a public hearing on January 16, 2019. Respondents own property within the City's geographical limits on which they have continuously operated a manufactured home park since approximately 1985; the manufactured home park consists of 15 concrete pads (with electrical, water, and sewer connections) on which manufactured homes may be placed. Subsequent Respondents beginning to utilize their property as a manufactured home park, the City passed zoning ordinances restricting how owners of real property within city limits could use that property. In particular, the City adopted ordinances re-zoning the area where Respondents' property is situated to "'M-1' Light Industrial" and regulating property within the City's designated Floodway Fringe District (in which Respondents' property is geographically located) such that property owners were required to meet certain standards to eliminate or limit damage from potential floods.

However, the ordinances allowed for property owners' continued use of their property in non-conformity with those ordinances, subject to certain conditions.

In December of 2015, Respondents' property experienced significant flooding that damaged several of the manufactured homes that were in place (the "2015 flood"); when the 2015 flood occurred, Respondents owned all but one of the 15 manufactured homes placed on Respondents' property. Although Respondents implemented certain repairs to the damaged manufactured homes following the 2015 flood and were granted occupancy permits for the homes in 2016,[2] the City did not grant Respondents or potential renters occupancy permits for the manufactured homes residing on Respondents' property in the years that followed. The City notified Respondents that the sought occupancy permits would not be granted because almost all of the manufactured homes that were damaged in the 2015 flood were so damaged that reconstruction/repair of the homes would cost more than 50% of their pre-damaged market values—a condition stated by City ordinances that prevents reconstruction or repair of a structure that is utilized as a non-conforming use. Because Respondents could not rent the manufactured homes without the required occupancy permits, Respondents appealed the City's denials of/refusals to grant occupancy permits[3] for 10 of the manufactured homes on their property to the Board.

At a public hearing held before the Board on January 16, 2019, Respondents and the City presented evidence and arguments on the sought occupancy permits and the validity of Respondents' non-conforming use of their property as a manufactured home park. In addition to several documents related to Respondents' operation of the manufactured home park on their

---

[2] Pursuant to City ordinance, Respondents/the renters of Respondents' manufactured homes were required to apply for and obtain occupancy permits annually.

[3] The City denied some of the subject occupancy permit applications and simply did not act on the others.

property, Respondents presented testimony by Mr. Heck, a contractor who valued the repairs that Respondents made to the manufactured homes after the 2015 flood, and a real estate agent who calculated an estimated value of Respondents' property. In sum, the evidence presented by Respondents showed that several of the manufactured homes on their property were damaged by the 2015 flood, and that Mr. Heck had made repairs to some, but not all, of those homes. However, Respondents did not present evidence of the comparative market values of the manufactured homes from both before and after the 2015 flood. Mr. Heck also testified that, at the time of the hearing, there were 12 manufactured homes placed on his property.

The City presented testimony by Daniel Rahn ("Rahn"), a civil engineer and the floodplain manager for the City, and by the city administrator for the City. Additionally, the City presented 10 "substantial damage estimator" reports ("SDE reports") completed by Rahn in January of 2016 immediately following the 2015 flood. Those SDE reports, which were completed by Rahn using a computer program created by the Federal Emergency Management Agency ("FEMA") for purposes of the National Flood Insurance Program, reflect the calculated estimates of damage, depreciation percentage, cash value of the pre-damage structure, and repair/reconstruction percentage (along with several other estimated figures) for the subject 10 individual manufactured homes that were damaged by the 2015 flood. The SDE reports showed that nine of the manufactured homes on Respondents' property were estimated to have sustained damage from the 2015 flood such that repairs/reconstruction would cost more than 50% of the homes' pre-damage market values.[4]

---

[4] One of the SDE reports showed that the manufactured home at 311 Second, South Street, Pacific, Missouri was estimated to have sustained damaged such that repair/reconstruction would cost 37.1% of the structure's pre-damage value.

During his testimony, Rahn explained in great detail how the FEMA program calculates the estimations reflected in the SDE reports using the data collected following a flood. Rahn also testified that, following the 2015 flood, he and several volunteers assessed the damaged manufactured homes on Respondents' property and recorded the relevant measurements used in completing the SDE reports. When the City moved to admit the SDE reports into evidence, Respondents objected on the grounds that there was insufficient foundation for such admission. Specifically, Respondents argued that Rahn did not have first-hand knowledge of the measurements inputted into the FEMA program because Rahn did not personally conduct all of the assessments during which the data was collected.[5] The Board overruled Respondents' objection and admitted the SDE reports into evidence.

The Board thereafter issued its decision in favor of the City. Specifically, the Board voted that Respondents do not have a legal, valid non-conforming use for their entire property that includes all of the manufactured homes and denied Respondents' appeal of the City's denial of/refusal to grant occupancy permits for the 10 individual manufactured homes. The Board also specifically found in its decision that it "credits the testimony and exhibits of [Rahn] … and discredits the testimony and exhibits of [Heck and Respondents' other witnesses]." Respondents filed a petition for writ of certiorari with the Circuit Court of Franklin County, which was granted by the circuit court because it concluded that the SDE reports were inadmissible. Specifically, the circuit court found that Rahn's testimony was insufficient foundation for the admission of the reports because he lacked first-hand knowledge of the cost of repair and damage to each of the manufactured homes, thereby causing the Board's decision to be unsupported by competent and substantial evidence.

---

[5] Rahn testified that he completed some of the assessments personally, but that several volunteers conducted the other assessments and collected data following the 2015 flood.

This appeal follows.

## II.    Standard of Review

On appeal of a circuit court's judgment upholding or overturning the decision of a board of zoning adjustment, we review the findings and conclusions of the board, and not the judgment of the circuit court. *Antioch Cmty. Church v. Bd. of Zoning Adjustment of City of Kansas City,* 543 S.W.3d 28, 33 (Mo. banc 2018); *State ex rel. Teefey v. Bd. of Zoning Adjustment of Kansas City,* 24 S.W.3d 681, 684 (Mo. banc 2000). The scope of our review

> is governed by article V, section 18 of the Missouri Constitution, which provides judicial review of an agency decision "shall include the determination whether the [decision is] authorized by law, and in cases in which a hearing is required by law, whether the [decision is] supported by competent and substantial evidence upon the whole record…."

*Antioch Cmty. Church,* 543 S.W.3d at 33–34. In other words, the scope of judicial review in appeals of decisions of a board of zoning adjustment is "limited to a determination of whether the ruling is authorized by law and is supported by competent and substantial evidence upon the whole record." *Id.* at 34 (quoting *Rosedale-Skinker Imp. Ass'n v. Bd. of Adjustment of City of St. Louis,* 425 S.W.2d 929, 936 (Mo. banc 1968)).

Whether a decision of an administrative body is authorized by law is a legal question that we review *de novo*. *Id.*; *State ex rel. Teefey,* 24 S.W.3d at 684. Conversely, when reviewing whether a decision is supported by competent and substantial evidence, we "must view the evidence and reasonable inferences therefrom in a light most favorable to the decision," and may not substitute our judgment of the evidence for the decision of the administrative body. *Antioch Cmty. Church,* 543 S.W.3d at 34; *see also Baumer v. City of Jennings,* 247 S.W.3d 105, 111 (Mo. App. E.D. 2008).

6

### III.    Discussion

Respondents raise four points on appeal.[6] In their first and second points, Respondents argue that the Board erred in deciding that Respondents' use of their property as a manufactured home park was no longer a valid non-conforming use under city ordinances because such determination was unauthorized by law and was unsupported by competent and substantial evidence. Specifically, Respondents contend in those points that the non-conforming use was never terminated (Point I) or abandoned (Point II). Similarly, in Respondents' third point, they assert that the Board's determination that Respondents no longer had a valid non-conforming use for their property as a manufactured home park was unauthorized by law and unsupported by competent and substantial evidence because the manufactured homes on Respondents' property were not damaged such that reconstruction/repair would cost more than 50% of their fair market value. And in their fourth point, Respondents argue that the Board erred in overruling Respondents' objection to the admission of the SDE reports into evidence because Rahn's testimony was insufficient foundation for admission of such evidence. Specifically, Respondents assert that Rahn lacked the necessary first-hand knowledge of the damage to and the reconstruction/repair costs for some of the manufactured homes for which SDE reports were completed. Because Respondents' fourth point affects the disposition of the other three related points, we address Respondents' fourth point before addressing the remaining three collectively.

---

[6] We note that Respondents' first, second, and third points on appeal are all impermissibly multifarious such that those points do not comply with Rule 84.04(d). Specifically, Respondents argue in all three of those points that the Board's decision "is not authorized by law and is not supported by competent and substantial evidence." Claims that a decision is unauthorized by law or is unsupported by competent and substantial evidence are distinct, independent claims of error that must be asserted in separate points relied on. Rule 84.04(d); *Librach v. Librach,* 575 S.W.3d 300, 307 (Mo. App. E.D. 2019). While Respondents' multifarious points do not comply with the mandatory briefing requirements of Rule 84.04, we exercise our discretion to review Respondents' non-compliant points *ex gratia* because their arguments are readily understandable. *See State ex rel. Hawley v. Robinson,* 577 S.W.3d 823, 827 (Mo. App. E.D. 2019). However, we cautiously exercise this discretion because each time we do so, we send an implicit message that substandard briefing is acceptable, which it is not. *Scott v. King*, 510 S.W.3d 887, 892 (Mo. App. E.D. 2017).

## Point IV

Contested administrative proceedings are not subject to the "technical rules of evidence," but "the 'fundamental rules of evidence' applicable to civil cases also are applicable in such administrative hearings." *Stone v. Mo. Dept. of Health and Senior Srvcs.,* 350 S.W.3d 14, 21 (Mo. banc 2011) (quoting *State Bd. of Registration for Healing Arts v. McDonagh,* 123 S.W.3d 146, 154 (Mo. banc 2003)); *see also Lagud v. Kansas City Bd. of Police Com'rs,* 136 S.W.3d 786, 792 (Mo. banc 2004). However, §§ 536.070 to 536.080 (part of what is known as the "Missouri Administrative Procedures Act") relax the rules of evidence (that normally apply in civil cases) for administrative proceedings.[7] *Stone,* 350 S.W.3d at 21. Section 536.070 establishes circumstances under which certain categories of evidence are admissible in administrative proceedings. Of particular relevance to the case at bar, § 536.070(11) states that:

> The results of statistical examinations or studies, or of audits, compilations of figures, or surveys, involving interviews with many persons, or examination of many records, or of long or complicated accounts, or of a large number of figures, or involving the ascertainment of many related facts, shall be admissible as evidence of such results, if it shall appear that such examination, study, audit, compilation of figures, or survey was made by or under the supervision of a witness, who is present at the hearing, who testifies to the accuracy of such results, and who is subject to cross-examination, and if it shall further appear by evidence adduced that the witness making or under whose supervision such examination, study, audit, compilation of figures, or survey was made was basically qualified to make it. All the circumstances relating to the making of such an examination, study, audit, compilation of figures or survey, including the nature and extent of the qualifications of the maker, may be shown to affect the weight of such evidence but such showing shall not affect its admissibility….

At the public hearing before the Board, Rahn testified at length on not only his own personal qualifications, but also on how the SDE computer program calculates the designated estimates of substantial damage, reconstruction/repair cost, etc. using the data collected (such as that collected by Rahn and several volunteers following the 2015 flood). Specifically, Rahn

---

[7] All references are to Mo. Rev. Stat. Cum. Supp. 2019, unless otherwise stated.

testified as to his education and experience as a civil engineer and his certification as floodplain manager (through Missouri's State Emergency Management Agency) for the City. Rahn further stated that, while he did not personally inspect all of the manufactured homes at issue, he did personally inspect several of them; Rahn's testimony also indicates that he was present at Respondents' manufactured home park while the assessments that he did not perform personally were being conducted. Additionally, Rahn testified regarding how the data for the SDE reports was collected, that he completed the SDE reports using the data collected, and detailed the process of doing so.

Considering Rahn's testimony given before the Board, we conclude that the SDE reports were correctly admitted into evidence pursuant to § 536.070(11). Although we find no Missouri case addressing evidence directly analogous to the SDE reports in this case, we deduce that the SDE reports fall into the category of evidence identified by § 536.070(11). The SDE reports undoubtedly include "compilations of figures" and may be characterized as "examination[s] … involving the ascertainment of many related facts." *See* § 536.070(11).

Further, Rahn's testimony sufficiently shows that he was "basically qualified" to complete the SDE reports, he opined as to the accuracy and reliability of the SDE reports, and the assessments that yielded the SDE data were either performed by Rahn or under his supervision, as required by § 536.070(11). And, as § 536.070(11) specifically explains, "[a]ll the circumstances relating to the making of such an examination, study, audit, compilation of figures or survey … may be shown to affect the weight of such evidence but such showing shall not affect its admissibility." Thus, contrary to Respondents' assertion that the SDE reports were inadmissible because Rahn lacked first-hand knowledge of all damage and costs of repair to the

9

subject manufactured homes, that argument goes to the weight of the SDE reports, and not their admissibility. *See* § 536.070(11).

We therefore find that the SDE reports were correctly admitted into evidence.[8] Respondents' Point IV is denied.

<u>Points I – III</u>

Respondents' arguments asserted in their first, second, and third points on appeal each concern the application of several ordinances of the City to Respondents' use of their property as a manufactured home park. Respondents assert that, under the effective versions of the ordinances at issue, they still had a valid non-conforming use for their property and the manufactured homes thereon. Conversely, the City and Board argue that Respondents no longer have a legal, valid non-conforming use for their property because of the significant damage to the subject manufactured homes on Respondents' property following the 2015 flood.

Multiple zoning and floodplain ordinances of the City code apply and affect this case.[9] "Where the language of an ordinance is clear and unambiguous, we will give effect to the language as written[.]" *Claudia Lee & Assocs. v. Kansas City, Mo. Bd. of Adjustment,* 489 S.W.3d 802, 806 (Mo. App. W.D. 2016) (quoting *City of Clinton v. Terra Foundation, Inc.,* 139 S.W.3d 186, 189 (Mo. App. W.D. 2004)). "We interpret ordinances by their plain language, in view of the whole ordinance." *Heuer v. City of Cape Girardeau,* 370 S.W.3d 903, 910 (Mo. App. E.D. 2012) (citing *State ex rel. Sunshine Enterprises of Mo., Inc., v. Bd. of Adjustment of City of St. Ann,* 64 S.W.3d 310, 312 (Mo. banc 2002) and *City of Bridgeton v. Titlemax of Mo., Inc.,* 292 S.W.3d 530, 536 (Mo. App. E.D. 2009)). As zoning ordinances, such as the aforementioned

---

[8] For further discussion of whether the SDE reports constitute competent and substantial evidence supporting the Board's decision, *see infra* **Discussion**, <u>Points I – III</u>.

[9] "Sections," as used hereafter, refer to the City Code of the City of Pacific, Missouri (2016), unless otherwise stated.

sections of the City code, are "in derogation of common law property rights," we strictly construe those ordinances "in favor of the property owner against the zoning authority." *Id.* at 911; *see also Claudia Lee & Assocs.,* 489 S.W.3d at 806.

Section 400.140 of the City code specifically zones areas (in which it is undisputed that Respondents' property sits) as "'M-1' Light Industrial," and significantly restricts use of a building or premises within that area; permitted uses under that section include "textile manufacturing," "small products assembly," "machine tool shop," and other such uses, and use of premises for a manufactured home park is not permitted. Section 400.240 of the City code sets specific standards and restrictions for manufactured home parks, including where manufactured home parks are permitted, required lot size, required anchoring, among several others. Section 420.210 of the City code establishes standards for the City's floodway fringe overlay district (in which it is uncontested that Respondents' property lies); § 420.210.A.5 specifically sets standards for manufactured homes that reside within the City's floodway fringe overlay district, including how the homes must be anchored and elevated on permanent foundations.

While placing such zoning restrictions on property within the City's geographical limits, Chapters 400 and 420 of the City code both allow uses of property that do not conform with the restrictions and standards established by those chapters if those uses were in existence prior to the passage of the ordinances setting those restrictions and standards. Specifically, § 400.270.D.1 states that "[a]ny lawfully existing non-conforming use of part or all of a structure or only involving a structure which is accessory to such use of land and any non-conforming structure which is devoted to an otherwise permitted use may be continued, so long as such use or structure remains otherwise lawful…." Section 400.270.D.5 further states that:

> In the event that any non-conforming structure or any structure devoted in whole or in part to a non-conforming use is extensively damaged or becomes extensively

11

deteriorated or is destroyed by any means to an extent equaling greater than fifty percent (50%) of its fair market value, such structure shall not be restored except in conformity with all applicable provisions of this Chapter including the regulations of the zoning district in which the building is situated.

Like § 400.270.D.1 of the City code, § 420.240.A states that "[a] structure or the use of a structure or premises which was lawful before the passage or amendment of the ordinance, but which is not in conformity with the provisions of this Chapter may be continued," subject to certain conditions; failure to comply with those conditions results in the invalidation of such non-conforming use. And like § 400.270.D.5, § 420.240.B states:

If any non-conforming use or structure is destroyed by any means, including flood, it shall not be reconstructed if the cost is more than fifty percent (50%) of the market value of the structure before the damage occurred, except that it be reconstructed in conformity with the provisions of this Chapter….

Section 420.270 defines "market value or fair market value" simply as "[a]n estimate of what is fair, economic, just and equitable value under normal local market conditions."

Respondents do not contest that their use of their property as a manufactured home park does not conform to the restrictions established by §§ 400.140, 400.240, and 420.210 of the City code. However, the parties are in agreement that Respondents' use of their property as a manufactured home park pre-dated the City's adoption of those ordinances, and was thus a legal, valid non-conforming use prior to the 2015 flood. What was at issue before the Board and is at issue on appeal is whether (a) Respondents had a legal, valid non-conforming use for the entirety of the manufactured home park (including the individual manufactured homes themselves) and (b) the occupancy permit applications for the individual manufactured homes were properly denied or not granted following damage to some of the manufactured homes on Respondents' property following the 2015 flood.

12

Despite the parties' contentions to the contrary, the ordinances at issue in this case very clearly dictate the outcome as a matter of law. Although the Board's decision does not reflect it, the primary arguments asserted by the City and Respondents at the public hearing pertained to whether the manufactured homes on Respondents' property were so damaged by the 2015 flood that §§ 400.270.D.5 and 420.240.B of the City code applied. Specifically, the City asserted that the validity of Respondents' non-conforming use for their property to operate a manufactured home park was lost pursuant to those sections because several of the manufactured homes on Respondents' property were damaged by the 2015 flood such that the repair/reconstruction of those homes would have cost more than 50% of their fair market value. Respondents countered that (a) the manufactured homes were not damaged by the 2015 flood such that repair/reconstruction cost more than 50% of the individual homes' fair market values and (b) even if the homes sustained such damage, it legally would not result in Respondents losing their non-conforming use of their property as a manufactured home park.

From examining and applying the plain language of §§ 400.270 and 420.240 of the City code, it is clear that the factual situation before us does not result in the complete loss or invalidation of Respondents' non-conforming use for their property as a manufactured home park; both §§ 400.270 and 420.240 address situations where a non-conforming use completely loses its validity (including abandonment of the use and where the use becomes a nuisance), which are not present in this case. Instead, this factual scenario falls under §§ 400.270.D.5 and 420.240.B, which each establish that non-conforming structures (such as the subject manufactured homes in this case) that are damaged or destroyed such that repair or reconstruction costs more than 50% of their fair market value shall not be restored except in conformity with the provisions of Chapters 400 and 420. It is also clear that, pursuant to Chapter

13

400 of the City code, it is legally impossible for Respondents to repair the manufactured homes on their property so that their use of such conforms with that chapter; § 400.270.D.5 specifically states that "such structure shall not be restored except in conformity with all applicable provisions of this Chapter **including the regulations of the zoning district in which the building is situated**." (Emphasis added). As stated previously, use of property as a manufactured home park does not conform with restrictions of the "'M-1' Light Industrial" zone (in which Respondents' property sits) designated by § 400.140.

Thus, if the manufactured homes on Respondents' property were damaged such that repair or reconstruction would cost more than 50% of their fair market value, Respondents are prohibited from restoring them under §§ 400.270.D.5 and 420.240.B of the City code absent a variance granted by the City. Consequently, the Board's decision concluding that Respondents do not have a legal, valid non-conforming use for Respondents' entire property that includes **all** of the manufactured homes and denying Respondents' appeal of the City's denial of/refusal to grant occupancy permits for the manufactured homes was authorized by law, as §§ 400.270.D.5 and 420.240.B of the City code prohibited the repair/reconstruction of the manufactured homes on Respondents' property if the homes were so damaged that those ordinance subsections applied.

The remaining and determinative issue in this case is whether the Board's decision was supported by competent and substantial evidence. Before the Board, Respondents presented several exhibits related to their operation of the manufactured home park on their property and testimony by Mr. Heck, a contractor who estimated the value of the repairs that Respondents made to the manufactured homes after the 2015 flood, and a real estate agent who calculated an estimated value of Respondents' property. Respondents argued before the Board and on appeal

14

that the evidence they presented showed that the manufactured homes on their property were not so damaged by the 2015 flood such that repair/reconstruction cost more than 50% of the manufactured homes' fair market values. In turn, the City presented the SDE reports and testimony by Rahn and the City's administrator. The City asserts that its proffered evidence demonstrated that the subject manufactured homes on Respondents' property were damaged by the 2015 flood such that repair/reconstruction would cost more than 50% of the manufactured homes' fair market values.

When viewing the evidence presented to the Board and the reasonable inferences therefrom in the light most favorable to its decision, *see Antioch Cmty. Church,* 543 S.W.3d at 34 and *Baumer,* 247 S.W.3d at 111, we find that the Board's decision was supported by competent and substantial evidence in all but one regard. As we concluded in our analysis of Respondents' Point IV, the SDE reports proffered by the City were admissible pursuant to § 536.070(11).[10] *See supra* Point IV. Those SDE reports provided estimations of the damage, depreciation percentage, cash value of the pre-damage structure, and repair/reconstruction percentage (along with several other estimated figures) for the subject 10 individual manufactured homes that were damaged by the 2015 flood. Additionally, the Board specifically credited the SDE reports and Rahn's testimony while discrediting the testimony of Mr. Heck and Respondents' other witnesses. This Court "must defer to the [administrative] agency's determination on the credibility of witnesses." *Phillips v. Schafer,* 343 S.W.3d 753, 757 (Mo. App. E.D. 2011); *see also TCF, LLC v. City of St. Louis,* 402 S.W.3d 176, 180 (Mo. App. E.D. 2013).

---

[10] Mo. Rev. Stat. Cum. Supp. 2019.

The SDE reports and Rahn's testimony adequately demonstrate that 9 of the 10 manufactured homes at issue were so damaged following the 2015 flood that repair/reconstruction would have cost more than 50% of the homes' fair market values. However, the City presented no evidence before the Board that the manufactured home residing at 311 Second, South Street, Pacific, Missouri was damaged such that repair/reconstruction would have cost more than 50% of the home's fair market value; the SDE report for the manufactured home at that address estimated the repair/reconstruction percentage for that home at only 37.1%.[11] Thus, the Board's decision was supported by competent and substantial evidence in regards to its conclusion that Respondents do not have a legal, valid non-conforming use for their entire property that includes all of the manufactured homes and its denial of Respondents' appeal of the City's denial of/refusal to grant occupancy permits for 9 of the 10 individual manufactured homes. The Board's denial of Respondents' appeal of the City's denial of/refusal to grant the occupancy permit for the manufactured home at 311 Second, South Street, Pacific, Missouri on the basis that it was so damaged by the 2015 flood that §§ 400.270.D.5 and 420.240.B applied (and thus prohibited repair/reconstruction) was unsupported by competent and substantial evidence. And as noted previously, Respondents are consequently prohibited from restoring the manufactured homes at issue here under §§ 400.270.D.5 and 420.240.B of the City code absent a variance granted by the City, with the exception of the manufactured home at 311 Second, South Street, Pacific, Missouri.

Respondents' Points I and II are denied, and Respondents' Point III is denied in part and granted in part.

---

[11] The "repair/reconstruction percentage" is simply the amount of "total estimated damages" divided by the "computed actual cash value" of the home as estimated by the FEMA SDE computer program.

## IV.    Conclusion

For the foregoing reasons, we reverse the judgment of the circuit court granting Respondents' petition for writ of certiorari and remand the case to the circuit court with instructions to enter judgment, consistent with this opinion, denying Respondents' petition for writ of certiorari in part and granting it in part. Specifically, we instruct the circuit court to enter judgment denying the petition for writ of certiorari in part as to the Board's conclusions that (1) Respondents do not have a legal, valid non-conforming use for their entire property that includes all of the manufactured homes; and (2) the Board's denial of Respondents' appeal of the City's denials of/refusals to grant occupancy permits for the individual manufactured homes was supported by sufficient competent and substantial evidence except in regards to the manufactured home located at 311 Second, South Street, Pacific, Missouri. We further instruct the circuit court to enter judgment granting the petition for writ of certiorari in part as to the the Board's denial of Respondents' appeal of the City's denial of/refusal to grant an occupancy permit for the manufactured home located at 311 Second, South Street, Pacific, Missouri and ordering the Board to hold the further proceedings necessary to determine whether the manufactured home located at that address should be granted an occupancy permit.

_____
Colleen Dolan, P.J.

Mary K. Hoff, J., concurs.
Robert M. Clayton III, J., concurs.

17