

# In the Missouri Court of Appeals
## Eastern District
### DIVISION ONE

| | | |
|---|---|---|
| RACHAL LAUT, f/k/a RACHAL GOVRO, and JOHN M. SOELLNER, | ) ) | No. ED101801 |
| | ) | |
| | ) | Appeal from the Circuit Court |
| Appellants, | ) | of Jefferson County |
| | ) | |
| vs. | ) | Hon. Gary P. Kramer |
| | ) | |
| CITY OF ARNOLD, | ) | |
| | ) | Filed: |
| Respondent. | ) | October 6, 2015 |

Rachal Laut and John Soellner ("Appellants") appeal from the judgment denying their request for civil penalties and attorney fees for the City of Arnold's violations of the Missouri Sunshine Law. We would affirm, but due to the general interest and importance of the question involved herein, we transfer this case to the Supreme Court pursuant to Rule 83.02.

Appellants each had some type of personal relationship with employees of the City's police department. Appellants came to believe that the employees improperly accessed the electronic law enforcement database known as REJIS[1] to obtain the confidential records of Appellants. After receiving Appellants' complaint about those employees, the City's chief of police ordered an internal affairs investigation. The investigation was completed promptly, and the resulting report closed.

Appellants' counsel sent a letter requesting certain documents under the Sunshine Law.[2] Appellants sought disclosure of incident reports, investigative reports and records of any kind relating to any police department employees' use of REJIS to access information about Appellants. An

---

[1] REJIS stands for "Regional Justice Information System."
[2] Sections 610.010, *et seq.*

"investigative report" is a record "inquiring into a crime or suspected crime." The record is deemed closed until the investigation becomes inactive, at which point the report is subject to disclosure. See Section 610.100.1(5) and Section 610.100.2. Appellants also asked for the City's communications with other law enforcement agencies about them and the reasons for termination and disciplinary action taken against the two accused employees. The letter stated that Appellants requested the documents for the purpose of investigating civil claims. The City responded that no criminal investigation had been performed related to the employees. The City stated that there were no incident reports or arrest records, only an internal affairs report. The City maintained that the internal affairs report and the other requested documents need not be disclosed under Section 610.021(3) of the Sunshine Law, which exempts from disclosure records relating to the "[h]iring, firing, disciplining or promoting" of employees when the records contain "personal information" about the employee. Section 610.021(3). "Personal information" is that which relates to the performance or merit of an employee. Id.

After another letter to the City asking it to reconsider, Appellants filed the instant lawsuit. They moved for summary judgment, which was denied. Then the City moved for summary judgment in its favor, arguing that the requested documents were exempt because they contained "personal information" under Section 610.021(3) and were "individually identifiable personnel records, performance ratings or records pertaining to employees" exempt from disclosure under Section 610.021(13). In support thereof, the City submitted the police chief's affidavit. Therein, the chief stated that Appellants' complaint alleged that the employees "abused their access to REJIS for personal reasons." He said that, thereafter, an internal affairs investigation was "commenced for the limited purpose to determine the fitness of the employees to perform their respective duties." He understood Appellants' Sunshine Law request to include both personnel records and the internal affairs report, which he declared he did not

and would not disclose pursuant to city ordinance. The trial court agreed that the records Appellants sought were exempt and granted summary judgment to the City.

On appeal, this Court affirmed the entry of summary judgment as to the records Appellants' sought that contained only the reasons for employee discipline. See Laut v. City of Arnold, 417 S.W.3d 315 (Mo. App. E.D. 2013). But we vacated the remainder of the summary judgment because there existed genuine issues of material fact. Id. Specifically, Appellants argued that the investigation the City undertook was directed at their complaint about improper access of REJIS, which is a crime, and thus the resulting internal affairs report should be disclosed. Id. at 322. The City maintained that the report was exempt from disclosure under Section 610.021(3) and (13). Id. We agreed that, based on the record, it was plausible both that the chief ordered the investigation into alleged criminal conduct and also that the internal affairs report evaluated job performance independently of the criminal investigation. Id. at 324. Because the trial court had not yet seen the contents of the internal affairs report or any of the other responsive documents, we remanded for an *in camera* examination.[3] Id. at 325-26. We explained that if the internal affairs report was deemed to qualify equally as an investigative report subject to disclosure and as exempt disciplinary or personnel record, then it must be disclosed. Id. at 322-23, 326-27. We cited Guyer v. City of Kirkwood, which held that "the permissive closure available in Section 610.021 is qualified by its own terms, that is, records may not be closed under that section "to the extent disclosure is otherwise required by law." 38 S.W.3d 412, 414 (Mo. banc 2001). Thus, because disclosure of an inactive investigative report is specifically required by Section 610.100.5, that would trump any closure permitted under Section 610.021. Id. We also held that Section 610.024.1 applies also and requires any non-exempt material to be separated from any exempt

---

[3] In so ordering, we noted that the Sunshine Law authorizes—but does not mandate—an *in camera* examination and, contrary to the City's claim, puts no burden on any particular party to request an *in camera* review. Laut, 417 S.W.3d at 325 (citing Section 610.100.5). Practically speaking, however, we determined that such a review was the only way to resolve the factual dispute in this case.

material so that it can be disclosed.  Laut, 412 S.W.3d at 322-23.  We also pointed out that certain material could be redacted before disclosure.  See id. at 327 (citing Section 610.100.3).

On remand, the trial court held a hearing regarding the *in camera* review.  The City brought the responsive documents and maintained its position that none of them should be disclosed.[4]  After reviewing the documents, the trial court entered an order in which it found that the internal affairs report was an investigative report because it was ordered as a result of a complaint alleging criminal violations.  The trial court also found that the City's contention that this was a personnel record was "wholly inaccurate."  Because the investigation was inactive, the court ordered the internal affairs report disclosed, except as to employee time sheets contained therein which were to be redacted.  The trial court found that the other documents presented were personnel records of the employee and "clearly exempt" from disclosure under Section 610.021(3) and (13).

The trial court then held a separate hearing on the issues of attorney fees and civil penalties.  Appellants claimed that the City's lengthy stonewalling efforts to forestall disclosure amounted to purposeful and knowing violations of the Sunshine Law, entitling them to attorney fees and civil penalties under Sections 610.027.3 and 610.027.4.  The trial court disagreed and entered judgment declining to assess fees or penalties:

> In view of the history of this case, which was first ruled against [Appellants] by this court on Motion for Summary Judgment, and then remanded after [Appellants'] successful appeal, and an *in camera* review of the records in question, this court cannot on this record find that the [City] either knowingly or purposefully violated the provisions of [the Sunshine Law].

This appeal follows.

---

[4] At that *in camera* review, in response to the City's argument that it had a good reason to withhold these documents, the trial court suggested that"[t]here is another way of looking at this"—namely, that the City's actions were knowing and purposeful and warranted attorney fees and penalties.  The court and counsel went on to discuss that further briefing was needed before the court could make a finding that the City acted knowingly or purposefully.  Thus, no such finding was made at that time, and as discussed above, another hearing was held before the fees and penalties issue was decided.

We review the trial court's decision on this issue to determine if it is against the weight of the evidence, there is no substantial evidence to support it or it erroneously declares or applies the law. Spradlin v. City of Fulton, 982 S.W.2d 255, 263 (Mo. banc 1998). Appellate courts should exercise the power to set aside a decision under Section 610.027 on the ground that it is against the weight of the evidence with caution and a firm belief that the decree or judgment is wrong. Id.

Civil penalties and reasonable attorney fee awards are authorized under Section 610.027 if a preponderance of the evidence establishes either that the Sunshine Law was "knowingly violated"—mandating up to $1,000 in penalties and permitting attorney fees—or "purposely violated"—mandating up to $5,000 in penalties and mandating reasonable attorney fees. See Section 610.027.3 and 610.027.4. A preponderance of the evidence is evidence that, as a whole, shows the fact to be proved to be more probable than not. Tipton v. Barton, 747 S.W.2d 325, 332 (Mo. App. E.D. 1988).

To demonstrate a knowing violation of the Sunshine Law, the plaintiff must establish that the governmental body had "actual knowledge that the conduct violated a statutory provision." White v. City of Ladue, 422 S.W.3d 439, 452 (Mo. App. E.D. 2013). To prove a purposeful violation requires more than establishing merely that the governmental body intended to engage in the conduct resulting in the violation. Spradlin, 982 S.W.2d at 262. Rather, there must be evidence that the governmental body had "a conscious design, intent, or plan to violate the law" and did so "with awareness of the probable consequence." Id. at 262; see also White, 422 S.W.3d at 452. Moreover, "[e]ngaging in conduct reasonably believed to be authorized by statute does not amount to a purposeful violation." Spradlin, 982 S.W.2d at 263. Courts look to both the governmental body's conduct at the time of its response to a Sunshine request and to its conduct throughout the course of the litigation to determine whether the violation was knowing or purposeful. See Chasnoff v. Mokwa, 2015 WL 1743088 *11 (Mo. App. E.D. 2015) (belated revelation of parallel criminal and investigative files late in the case, along with sham

consent agreement entered in order to evade enforcement of a disclosure order, constituted a knowing violation of Sunshine Law); R.L. Polk & Company v. Missouri Department of Revenue, 309 S.W.3d 881, 887 (finding of no purposeful or knowing violation was not against weight of evidence given trial court's familiarity "with entire course of the parties' litigation" wherein defendant's initial position was premised on a belief that statute did not apply, and after court ruled it did apply, defendant attempted to comply).

The thrust of Appellants' argument is that because the City maintained a position throughout this protracted lawsuit that was ultimately determined to be "wholly inaccurate," the trial court should have found that the City knowingly and purposely violated the law. We disagree. That the City turned out to be wrong does not necessarily show that it had a conscious plan to violate the law or actual knowledge that it was violating the law when it refused to disclose the internal affairs report, any more than the fact that the City was initially successful in arguing this position establishes the contrary. Rather, the preponderance of the evidence in this case, including the history of this litigation, appears to be sufficient to support the trial court's conclusion that no such purposeful or knowing violation occurred.

First, there seems to be no dispute at this point that the initial complaint alleged criminal activity, which Appellants argue raises a presumption that the investigation was directed at that crime and that the report generated by the investigation must be disclosed. In Guyer, the Supreme Court suggested such a presumption when it remanded for a determination of whether the citizen complaint in that case implicated any criminal conduct. 38 S.W.3d at 415. If so, the Court stated, "it should be presumed that such alleged criminal conduct was the subject of the investigation." Id. But we have already recognized in the first appeal that, even if we presume the investigation was into criminal conduct, the chief's affidavit presents another "plausible view" that the internal affairs report also contained—independent of that criminal investigation—an evaluation of job performance. Laut, 417 S.W.3d at 324. Thus, while

the presumptive view turned out to be the one the trial court adopted, that fact does not necessarily establish that the City acted purposely and knowingly by taking an alternative plausible view that rebutted that presumption.

Appellants also argue that the City knew that Appellants were planning to file a civil rights lawsuit, which raises an inference that the real reason for refusing to disclose was to delay filing of that suit. Appellants cite to Buckner v. Burnett, in which the court suggested that if a public official intentionally forestalled production of records, forcing a requester to sue for disclosure, that "would be" a purposeful violation. 908 S.W.2d 908, 912 (Mo. App. W.D. 1995). But in that case, a purposeful violation had not even been pled, nor was there any discussion of what evidence might be necessary to prove such intentional forestalling. Moreover, the court went on to point out that one can fail to respond fully to a request *without* purposely violating the statute, and merely asserting the failure to respond to Sunshine requests does not plead—much less prove—a purposeful violation. Id. at 912. In this case, we have the chief's affidavit, from which we can reasonably infer that the City's intent was not to forestall a lawsuit, but to protect its employees' privacy. There being no evidence to contradict that this was the City's motive, it would not be reasonable to infer a more sinister one.

Even if we could reach the inferences and conclusion Appellants urge—that the City knew all along that the internal affairs report qualified as a criminal investigation and knowingly took a wholly inaccurate position intending to thwart Appellants' efforts to file a lawsuit—we simply would not be free to substitute our judgment for that of the trial court. See Spradlin, 982 S.W.2d at 263. The trial court reviewed the internal affairs report and, although it disagreed with the City's characterization of it and found a violation, the court nonetheless also determined that the failure to disclose it was not done purposely or knowingly in violation of the Sunshine Law. Nothing in the record, nor any of Appellants' arguments on appeal, leaves us with the firm belief that the judgment was wrong or otherwise

demonstrates that the trial court's conclusions were against the weight of the evidence or unsupported by the evidence.

Nevertheless, there are few cases discussing what evidence would be sufficient to support a finding that a violation was knowing or purposeful under this statute. And we note that the Supreme Court has recently taken another case on transfer from this district in which these same provisions are at issue. See Strake v. Robinwood West Community Improvement District, SC 94842. Therefore, we find this case involves an issue of general interest and importance and thus it is proper to transfer the case to the Supreme Court. See Rule 83.02.

CASE TRANSFERRED.

ROBERT G. DOWD, JR., Presiding Judge

Roy L. Richter, J., concurs.
Lisa S. Van Amburg, C.J., concurs with separate opinion.


RACHAL LAUT and ) No. ED101801
JOHN M. SOELLNER, )
)
    Appellants, ) Appeal from the Circuit Court
) of Jefferson County
vs. )
)
CITY OF ARNOLD, ) Hon. Gary P. Kramer
)
    Respondent. ) FILED:  October 6, 2015

## CONCURRING OPINION

I concur in transferring the case to the Missouri Supreme Court pursuant to Rule 83.02. In my view, however, the trial court misapplied the law to its own central finding of fact.  I would otherwise reverse the judgment and remand for entry of an award in favor of Appellants.

Appellants' allegation of criminal conduct prompted the City's investigation, and the employees were terminated or disciplined following the investigation.  The Missouri Supreme Court has held that, when a citizen complaint alleges criminal conduct by an officer, "it should be *presumed* that such alleged criminal conduct was the subject of the investigation, and the report generated by the investigation must be disclosed." Guyer v. City of Kirkwood, 38 S.W.3d 412, 415 (Mo. 2001).  In the first appellate opinion in this case, this Court remanded the case to the trial court for an *in camera* inspection of the file and instructed:

> It is reasonable to infer from Chief Shockey's statements that, upon receiving
> Laut's complaint of improper access to REJIS, Chief Shockey ordered an

investigation into the alleged criminal conduct. *See Guyer,* 38 S.W.3d at 415 (court can presume upon remand investigation concerned criminal conduct if such conduct alleged in complaint). Moreover, Chief Shockey's affidavit makes no mention of any inquiry into personal relationships affecting job performance, but rather he ordered the investigation in response to the allegation of improper access to REJIS. It is reasonable to infer that Chief Shockey's determination of the employees' fitness to perform their job duties was based, at least in part, on an evaluation of whether they had abused their access to REJIS. If true, that investigation into alleged criminal conduct would classify the resulting Internal Affairs report as an investigative report.

However, Chief Shockey's affidavit also states that he ordered an internal inquiry regarding job performance. Even though the Internal Affairs investigation came about after Laut's complaint alleging criminal conduct, it is possible the Internal Affairs report evaluated job performance independently of any investigation into alleged criminal conduct. If true, the report would be more appropriately classified as a personnel record.

Laut v. City of Arnold, 417 S.W.3d 315, 324 (Mo. App. E.D. 2013). This Court also specifically noted that fines and fees "are available in the event the trial court finds a violation of the Sunshine law." Id. at 327.

Nevertheless, on remand, the City persisted in denying that the investigation was a criminal investigation and asserted that it was merely assessing the employees' fitness to perform their jobs. Thus, the City insisted that the IA report was not an investigative report subject to disclosure but rather a personnel document exempt from disclosure. The trial court found this characterization to be "wholly inaccurate," *i.e.*, completely untrue. Necessarily then, the only reasonable conclusion is that the IA report memorialized a criminal investigation.[1]

At the remand hearing, the trial court commented that the City "knowingly and purposefully refused to grant the documents." In its written judgment, however, the court pivoted and stated that, "in view of the history of this case" (referring to the City's success on summary judgment and this Court's benefit of doubt in the first appeal), it could not find "on this record"

---

[1] Logically, not all personnel matters have a criminal aspect, but certainly all criminal matters also invoke personnel concerns.

2

that the City violated the Act knowingly or purposefully. In other words, the trial court relied upon the litigation prompted by the City's refusal to release the record as evidence of the City's purported good faith. Similarly, the majority here suggests that the City merely turned out to be wrong on a disputed question of law as to whether the IA report was subject to disclosure. But the dispute was one of *fact*, and this central factual justification for the City's obstruction was revealed to be untrue. The trial court's resulting description of the City's conduct ("You knowingly and purposely refused to grant the documents.") and the City's blatant factual misrepresentation ("The Defendant City of Arnold's contention that the Internal Affairs report is in whole or in part a personnel record is wholly inaccurate.") cannot, as a matter of law, rebut the

presumption established by the Supreme Court in Guyer and therefore logically precludes a finding that the City simply misinterpreted the statute. In short, the trial court's own findings of fact cannot support its legal conclusion, applying §610.027, that the City's violation was not "knowing." The overarching purpose of the Sunshine Act is to ensure open government and

transparency. Laut, 417 S.W.3d at 318. If ignorance of the law is no excuse for the average citizen, then surely a contrived misconstruction of the Sunshine Act is no excuse for a government body charged with performing its mandates.

At the very least, the trial court's own findings of fact warrant an award under §610.027.3 for a "knowing" violation of the Act. However, given the general interest and importance of the policy implications of this case and the pendency of the Strake case cited by the majority, I concur in transferring this case to the Missouri Supreme Court pursuant to Rule 83.02.

_Lisa S. Van Amburg_
Lisa S. Van Amburg, Chief Judge

3